## Stabler *versus* The Commonwealth.

1. The mere delivery of poison to a person and soliciting him to place it in the spring of a certain party is not " an attempt to administer poison," within the meaning of the 82d section of the Act of March 31st 1860.

2. The act proved did not approximate sufficiently near to the commission of murder to establish an attempt to commit it within the meaning of the statute.

October· 5th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Quarter Sessions of *Allegheny county* : Of October and November Term 1880, No. 188.

Indictment of Alois Stabler for an attempt to administer poison and solicitation to commit a felony.

The first count charged that the defendant feloniously did attempt to administer a certain poison, commonly called Paris green, * * * to one Richard F. Waring, * * * with intent to commit the crime of murder, and to feloniously kill and murder the said Richard F. Waring, &c.

The sixth count charged that defendant did falsely and wickedly solicit and invite one John Neyer, a servant of the said Richard F. Waring, to administer a certain poison and noxious and dangerous substance commonly called Paris green, to the said Richard F. Waring, and divers other persons whose names are to said inquest unknown, of the family of the said Richard F. Waring, &c.

There having been no official notes of testimony taken on the trial of the case in the court below, it was agreed that this court should treat the following as being all the testimony bearing on the first count of the indictment.

" The only witness sworn was John Neyer, who testified that he had a conversation with Alois Stabler, over a year before the information was made against him, in which Stabler stated his grievance

[Stabler v. Commonwealth.]

against Waring, and stated his (Stabler's) determination to be revenged, and then solicited Neyer to put poison in Waring's spring, so that he and his family would be poisoned, and offered the witness a reward therefor, and gave him directions how to administer the poison, and gave him the poison to so administer. That the witness refused to administer the poison, and said he would not have anything to do with it, and handed the poison back to Stabler. That the witness had his coat off when the two were talking together. Three or four days after this conversation, the witness, upon putting on his coat, found a package in his coat pocket, which he believed was the same package that Stabler had handed him. That the witness shortly after left the city of Pittsburgh and went to Toledo, Ohio, where he remained several months. That he again returned to Pittsburgh, about a year after the conversation with Stabler, and then, for the first time, told a party about what had taken place, and handed this party the package of poison.

"That the witness never had any intention of administering the poison, and never did anything towards it, and never had any other conversation with Stabler about the matter except the one stated."

The court, Ewing, P. J., charged the jury:—

"That, if they believed the testimony of John Neyer, and found that the defendant, Stabler, in a conference with him had stated his grievance against Waring, and his determination to be revenged, and solicited Neyer to put poison in Waring's spring or well, so that he and his family would be poisoned thereby, and offered him a reward therefor, giving him directions how to administer the poison, and gave him the poison to so administer, which having been handed back, was, in the same conference, put by Stabler, the defendant, into the coat pocket of Neyer, and left there, expecting and believing that he would place the poison as requested, it constituted an attempt, and they might find the defendant guilty on the first count of the indictment."

The jury found a verdict of guilty on both the above counts. The defendant moved for a new trial and in arrest of judgment. The court overruled both motions and pronounced a separate sentence on each count. No complaint was made of the conviction on the sixth count, but the defendant took this writ and alleged that the court erred, inter alia, in charging that the testimony of Neyer was sufficient to sustain a verdict of guilty on the first count

*W. C. Moreland* and *Newton C. Cook*, for plaintiff in error.— An attempt to commit a crime is an endeavor to accomplish it, carried beyond mere preparation, but falling short of the ultimate design. In Kelly v. Commonwealth, 1 Grant 488, &c., under an indictment for murder, in which the Commonwealth charged that the crime was committed in an attempt to commit rape, THOMPSON,

[Stabler *v.* Commonwealth.]

C. J., says: "An attempt is an ineffectual offer by force. Acts are necessary to constitute an attempt. It should be actual, not constructive. The intent is not equivalent to an act demonstrative of an attempt." The proof here did not sustain the allegation. The Act of 1860, sect. 82, Pamph. L. 403, under which the indictment was drawn, follows the statute of 1 Vict. c. 85, sect. 3, which has received the construction for which we contend : Regina *v.* Williams and Ross, 1 Car. & K. 586 ; s. c. 1 Dennison s Crown Cases 40. Whilst it is true that foreign cases cannot override the express words of a Pennsylvania statute, it is equally true that where a foreign statute agrees with our own, and such statute has received a judicial construction, the latter will be accepted as some authority upon the true interpretation of the statute, and what is intended to be directed or prohibited by it.

The case of People *v.* Bush, 4 Hill 134, on which the court below relied, was decided on a statute of New York differing materially in some of its language from the Act of 1860.

*John S. Robb*, District Attorney, for the Commonwealth.

Mr. Justice MERCUR delivered the opinion of the court, October 25th 1880.

This indictment contains six counts. A conviction was had on the first and sixth, and sentence was pronounced on each separately. The first charges a felonious attempt to administer poison to one Waring with intent to commit the crime of murder, and feloniously to kill and murder him ; the sixth, with wickedly soliciting one Neyer to administer poison to said Waring. No error is now alleged to the conviction and judgment on the sixth count. The conviction on the first, and the judgment thereon, are assigned for error. This count is framed under sect. 82 of the Act of March 31st 1860, Purd. Dig. 340. It declares, "If any person shall attempt to administer any poison or other destructive thing, or shall attempt to cut or stab or wound, or shall shoot at any person, or shall, by drawing a trigger or in any other manner, attempt to discharge any kind of loaded arms at any person, or shall attempt to drown, suffocate or strangle any person, with intent, in any of the cases aforesaid, to commit the crime of murder, he shall, although no bodily injury be effected, be guilty of felony, and be sentenced to pay a fine of $1000, and undergo an imprisonment, by separate or solitary confinement, not exceeding seven years."

All the testimony to prove the first count was the evidence of Neyer. He testified to a conversation which he had with Stabler more than a year before the information was made against him. His testimony is substantially this. Stabler stated his grievance against Waring, and a determination to be revenged. He solicited witness to put poison in Waring's spring so that the latter and his

[Stabler *v.* Commonwealth.]

family would be poisoned, offering him a reward for so doing. He handed witness the poison, and directed how it should be administered. Witness replied he would have nothing to do with it, and handed the poison back to Stabler. While they were conversing the coat of witness was off; on putting it on three or four days thereafter, he found a package in the pocket, and believed it to be the one that Stabler had handed him. Soon after this witness left the state, and did not return until about a year thereafter. He then for the first time related the conversation to a person, and handed him the package of poison. He further testified that he never had any intention of administering the poison, and never did anything towards it, and had no other conversation with Stabler about the matter.

Is this evidence sufficient, within the meaning of the statute, to prove an attempt on the part of Stabler, to administer the poison ? The act recognises a distinction between *intent* and *attempt*. The former indicates the purpose existing in the mind, the latter an act to be committed. Merely soliciting one to do an act is not an attempt to do that act : Rex *v.* Butler, 6 C. & P. 368 ; Smith *v.* Commonwealth, 4 P. F. Smith 209. In this last case it was said, " in a high, moral sense it may be true that solicitation is attempt ; but in a legal sense it is not." In some cases it has been held, although a solicitation to commit a misdemeanor, does not constitute an attempt to commit the misdemeanor ; yet a solicitation to commit a felony does constitute an attempt to commit the felony. This view does not appear to have been adopted in Pennsylvania. The case of Kelly *v.* Commonwealth, 1 Grant 484, was an indictment for murder charged to have been committed in an attempt to commit a rape. It was held that acts were necessary to constitute an attempt. That an attempt to commit a rape was an ineffectual offer by force with intent to have carnal knowledge. If such acts, with such intent, were not proved, the prisoner could not be convicted of the attempt ; that it should be an actual, not a constructive attempt. An intent to commit fornication was insufficient.

In the present case it is contended that putting the poison into the pocket of the witness was an act sufficient to constitute the attempt, if Stabler expected and believed it would be used as he had requested. The uncontradicted evidence is, that it was so put without the knowledge of the witness, and after his positive and unqualified refusal to use it. He swears he never used it or attempted to use it, or had any intention of so doing. To submit to the jury to find that Stabler expected and believed the witness would administer it, was not only without evidence but against the evidence. If, however, it was actually delivered with that intent, we do not think it constituted an attempt to murder under the 82d section of the Act of March 31st 1860. This section is substan-

14 Norris—21

[Stabler *v.* Commonwealth.]

tially a copy of third section of the Act of 1 Victoria, chapter 85. In an indictment under that act, in Regina *v.* Williams et al., 1 C. & K. 589, it was held, that the delivery of poison to an agent, with directions to him to cause it to be administered to another, was insufficient to establish an attempt to murder. So on an indictment under the same chapter for attempting to discharge loaded firearms at a person, it was held, in Regina *v.* Lewis, 9 C. & P. 523, that some act must be shown to prove the person did attempt to discharge the firearms, and merely presenting them was not sufficient. Upon an indictment for attempting to discharge a pistol loaded with powder and ball with intent to murder, a witness testified, "the prisoner took out a small pistol and said, ' I will settle you,' or ' I will do you,' and either half or full cocked the pistol, and pointed the muzzle at my brother," with his finger on the trigger; yet it was held the charge of felony could not be supported, as it was not proved that the prisoner drew the trigger : Reg. *v.* St. George, Idem 483 (38 E. C. L. R.). Parke, B., said, " here a trigger was to be drawn, and it is not drawn. It seems to me the object of this act was to furnish proximate attempts, that is those attempts which immediately lead to the discharge of loaded arms." It is true, in People *v.* Bush, 4 Hill 133, a conviction was sustained for an attempt to commit a felony, where the act proved was as remote from the crime intended to be perpetrated, as the act proved is in the present case. That ruling, however, rests on a statute of New York, which contains language not in the Act of 1 Victoria, cited, nor in our own statute. It has the additional words, " and in such attempt shall do any act toward the commission, of such offence." In giving construction to a statute containing such language, a conclusion may well be reached, that would be forced and unjust in construing our statute which is so different.

The conduct of the plaintiff in error, as testified to by the witness, undoubtedly shows an offence for which an indictment will lie without any further act having been committed. He was rightly convicted, therefore, on the sixth count.

We, however, think, all that occurred at the interview with the witness, and the legal inference deducible therefrom, followed by no other act, are not sufficent to justify a conviction for an attempt to commit the felony as charged. The act proved did not approximate sufficiently near to the commission of murder to establish an attempt to commit it within the meaning of the statute.

The second and third assignments are sustained ; and on the first count

Judgment reversed.

STERRETT, J., dissented.