THE PEOPLE *v*. DESSÚS ET AL.

## APPEAL from the District Court of Arecibo.

No. 39.—Decided May 29, 1907.

CRIME AGAINST THE PUBLIC PEACE—RIOT—JURISDICTION.—The circulation of a newspaper within the judicial district is sufficient to give the court jurisdiction of the person held responsible for the publication therein of an editorial constituting a violation of section 359 of the Penal Code, and the fact that such newspaper was printed at a place beyond the judicial district, or that there were *habeas corpus* proceedings in regard to the same matter pending in other courts, is not sufficient to deprive the court, before which the criminal act was complained of, of its jurisdiction.

ID.—COUNSELING OR AIDING IN THE COMMISSION OF A CRIME.—The words "every person who counsels or aids another in the commission of such act is guilty of a misdemeanor," contained in section 47 of the Penal Code, cannot be construed otherwise than that every person who counsels another to commit such an act, or who aids him in the commission thereof, is guilty of a misdemeanor. Any other construction, and especially the addition of the words "in the commission" after the word "counsels", would be forced, because advice is given to commit the act while assistance or aid is given during the commission thereof.

INFORMATION—SUFFICIENCY THEREOF.—Where an information complies with the requirements of section 82 of the Code of Criminal Procedure it is sufficient.

PARTICIPATION IN THE COMMISSION OF A FELONY OR MISDEMEANOR.—To advise, ask, or induce a person to commit a crime, whether it is a felony or a misdemeanor, constitutes in itself a crime which is entirely different, complete and independent in itself from the one whose commission is advised, it being entirely immaterial whether or not such advice has been followed and whether or not the giving thereof resulted in the commission of the crime.

ID.—RIOT—MURDER—PUBLICATION OF ARTICLES TENDING TO INCITE COMMISSION THEREOF.—The publication of an article counseling, requesting, and inducing the public in general, and especially certain persons to come together and cause a riot, which is a misdemeanor, or commit murder, which is a felony,

constitutes a crime, and the fact that such advice was not followed or that the persons to whom it was directed did or did not read the article contained therein is of no importance whatever. The mere publication of the article constitutes the crime, it not being necessary that any act whatever be committed as a result of such publication.

CONFLICTING EVIDENCE—FINDINGS UPON THE SAME.—The Supreme Court must accept the findings of the jury or of the trial court upon the evidence where it is conflicting, unless it be shown that in reaching such conclusions it was actuated by passion, prejudice or partiality or that manifest error was committed.

APPEAL—ERRORS' OF PROCEDURE NOT PREJUDICIAL TO THE RIGHTS OF THE ACCUSED.—The appellate court will not reverse a judgment of conviction by reason of the commission of mere errors of procedure, by which the substantial rights of the accused are in no wise prejudiced.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellants.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

The appellants in this case, Luis Felipe Dessús and Carlos García Gaona, were accused, prosecuted and convicted in the District Court of Arecibo of the offense of counseling a riot, by the publication, in the city of San Juan, in a paper called the *Daily Rumor,* of an article headed with the words "Head for Head! Life for Life!" which crime is denounced in sections 47 and 359 of the Penal Code.

Although an appeal was promptly taken from the judgment of conviction, no great attention has been given to the main points in the case, by the defendants, in this court, and it has been left for the investigation of the justices almost unaided by the assistance of counsel. It was submitted on oral arguments, on the 22d day of December last, and has received, as usual, the careful attention of every member of the court.

The first matter which arises for consideration is, of course, the jurisdiction of the District Court of Arecibo, where the prosecution was begun and the trial and conviction occurred and from whose judgment this appeal is taken.

The district court clearly had jurisdiction of this case, and nothing appears in the record to the contrary. Certainly,

neither could the fact that the printing was done in San Juan, beyond the Arecibo district, prevent that court from assuming jurisdiction in the first place, nor could the pendency of the *habeas corpus* proceedings, in this court, oust the jurisdiction of the trial court after the prosecution had been once begun. The publication was made in whatever place the paper was circulated, and the counsel and advice constituting the offense was given there as well. These points are both too clear for argument, or further discussion.

Let us see what is the nature of the information as presented in the District Court of Arecibo. It reads literally as follows:

"Angel Acosta Quintero, *fiscal* of the District Court for the Judicial District of Arecibo, having previously taken the oath prescribed by law, states:

"That he files an information against Luis Felipe Dessús and C. García Gaona, residents of the city of San Juan, P. R., for the crime of counseling a riot, as follows:

"The said Luis Felipe Dessús, and C. García Gaona, residents of the city of San Juan, P. R., who are the editors and directors of the newspaper *El Rumor · Diario* which is edited in the city of San Juan, and in its issue number 605 corresponding to the 24th day of May, 1906, which is hereto attached and made a part of this complaint, an article is published under the heading 'Head for Head! Life for Life!' and which has been circulated in this city prior to Sunday the 27th of the present month and year, on which day there occurred several incidents in Hato Viejo resulting in serious wounds to the Insular Policeman Ramón T. Quijano, and the death of a citizen by the name of Juan Rosado, and in which it is said 'Charges before the courts amount to nothing' and advises 'assault' and incites the workingmen to 'rise in rebellion' and saying 'we should be glad to take our pen and comment upon a bloody encounter between the police and the workingmen,' which phrases and the whole contents of the said article, tend to advise and counsel a riot in this city and jurisdiction of Arecibo, by reason of the strike of workingmen at the cane plantations. This crime is provided for in section 359, in relation with section 47 of the present Penal Code, since the employment of force and violence is advised."

The newspaper article which forms the basis of this prosecution is substantially in the following words:

"Head for Head! Life for Life!"

"Yesterday we published a telegram which was sent to us by Mr. Padilla, of Arecibo, in regard to the cruel treatment to which the police subjected the striking workmen in that district. We have already said that so long as the workingmen do not defend themselves by the use of force, the abuses will continue. A head must be taken for a head; life for life. Let a dozen men determine to fall, and a new era of moral regeneration will begin for the proletariat. Charges before the courts amount to nothing; neither do the protests by pen and word. Assault, assault repel the assault. Reply to a blow from a policeman's club by a blow with a club—to a shot with another shot. And if there are no clubs nor firearms, there is always a stone within the reach of the hand. We would take pleasure in taking up our pen to comment upon a bloody encounter between the police and the workingmen. Abuses will end when there is no fear of responding to a blow with a blow; if there is no courage to uphold a situation of rebellion, then it is better not to provoke the movement. It is a sad thing to bow the head in a cowardly manner to the sword of the rabble who govern us. Rise up, downtrodden workmen, as it is thus that the despot who orders assassination and upholds anarchy will yield. Rise up, you must rise up!"

The statutes which are referred to, in the information, are articles 47 and 359 of the Penal Code of Porto Rico, which read literally as follows:

"Section 47.—Whenever an act is declared a misdemeanor, and no punishment for counseling or aiding in the commission of such act is expressly prescribed by law, every person who counsels or aids another in the commission of such act is guilty of a misdemeanor."

"Section 359.—Any use of force or violence, disturbing the public peace or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot."

It is contended, on behalf of the accused, that, under these sections of the Code, a conviction cannot be sustained unless a riot follows as a direct consequence of the counsel given in

the article, which was published by the defendants, in their newspaper, and is referred to in the information presented against them.

We must first consider the construction put, by the defendants, upon certain words of section 47 of the Penal Code which reads thus: "Every person who counsels or aids another in the commission of such act is guilty of a misdemeanor." To my mind this clearly means that every person who counsels another to commit such an act or aids another in the commission of such an act is guilty of a misdemeanor. Any other construction, and especially tacking on the words "in the commission" to the word "counsels" is a forced construction and cannot be indulged in by an appellate court gravely endeavoring to carry out the intention of the Legislature, as we are required to do by the basic rules of interpretation followed by all the courts in the civilized world. We never speak of a man counseling another in doing any act, but of counseling, or advising, or inciting, or persuading, or soliciting another person to do some act, or to refrain from so doing. The counseling is completed before the act is begun; the advice is entirely distinct from the act which is the subject of the counsel. Not so with aiding. Aid is rendered in the doing of an act or in the commission of a misdemeanor or a crime. These distinctions are not only required by the ordinary rules of grammar and of rhetoric, but are clearly drawn and pointed out by the simple dictates of reason. Shall we not then accept them?

What can be said of the strictures which may possibly be applied to the information? No exceptions were taken to the information on the trial, and no brief whatever has been filed for the defendants in this court. If there are any errors in the information they do not appear from an inspection thereof and are not fundamental. The pleading is certainly sufficient under the statute in the absence of a special exception pointing out its defects. Certainly all the requisites mentioned in section 82 of our Code of Criminal Procedure are

contained in this information, and in accordance with said
section it should be accepted as sufficient. Any contention
that the information is insufficient must be based on the
view that the crime or offense of inciting anyone to com-
mit a misdemeanor is not complete unless the misdemeanor
is actually committed as a consequence of the advice or coun-
sel given. Such a proposition, in my view, is contrary to the
almost uniform current of decisions as found in the numerous
volumes of opinions emanating from the American courts.
Let us briefly review these opinions, or at least some of the
many to be found in books on this subject. So long ago as
the year 1827 a very learned court, in the State of Connecti-
cut, speaking through the mouth of Judge Peters, in discuss-
ing this same question says:

"But admitting that the letter in question is not a libel, it is
certainly a solicitaion to commit a greater crime. It explicity invites
Mrs. White to make an assignation to meet the defendant at his house,
or at some other place, to commit adultery with him. I have already
shown that adultery is a great crime, once capital, now punishable
like most other felonies; and an attempt to commit, or a solicitation
of another to commit such a crime, must be at least a high crime and
misdemeanor; and we have already said that a high crime and mis-
demeanor is nearly allied and equal in guilt to felony; *State* v. *Knapp,*
6 Conn. 415; whereof the superior court has cognizance, by statute
and by common law; Stat. tit. 22, sec. 98; *State* v. *Danforth,* 3 Conn.
112."

"But it is argued that a mere intent to commit evil is not indict-
able without an act done; but is there not an act done when it is
charged that the defendant solicited another to commit adultery?
the solicitation is an act, and God forbid that it should not be con-
sidered as an offense.

"I am of opinion that the information is sufficient and advise that
the motion in arrest be overruled. The other judges were of the same
opinion, except Brainard, J., who was absent. Information sufficient."
(*State of Connecticut* v. *Avery,* 18 Am. Dec. 107, 108; 7 Conn. 266.)

If this could be so decided under the common law, in the
absence of any statute on the subject, how can we fail or

refuse to follow this eminent authority in the face of a plain and unequivocal statute, such as ours, requiring us to do so?

Again in the year 1883, more than half a century later, in the adjoining State of Massachusetts, the same doctrine is maintained. Let us make an extensive extract from an important opinion rendered by Chief Justice Morton in a case somewhat similar to the one at bar. We will first copy the indictment and some remarks from the statement of the case, and then the entire opinion. They will be found to read as follows:

"Indictment as follows: The jurors for the Commonwealth aforesaid, on their oath present, that John E. Flagg of Royalston in said county, on the twenty-first day of May in the year eighteen hundred and eighty-three, at Royalston in said county, did wickedly, advisedly and corruptly solicit, urge and endeavor to procure one Thomas Stafford, feloniously, wilfully and maliciously, to set fire to and burn a certain building, to wit, a barn of one Ellen H. Clark, there situate in said Royalston, by then and there wickedly, advisedly and corruptly offering to said Thomas Stafford, a large sum of money, to wit, the sum of ten dollars, with intent of him, the said John E. Flagg, thereby then and there to procure him, the said Thomas Stafford, feloniously, wilfully and maliciously to set fire to and burn the said barn of Ellen H. Clark aforesaid.

"And the jurors aforesaid, on their oath aforesaid, do further present, that said John E. Flagg, of Royalston, aforesaid, in the county aforesaid, on the 21st day of May in the year aforesaid at Royalston aforesaid, in the county aforesaid, did wickedly, advisedly and corruptly solicit and incite one Thomas Stafford, feloniously, wilfully and maliciously, to set fire to and burn a certain building, to wit, a barn of one Ellen H. Clark, there situate in said Royalston, with intent of him, the said John E. Flagg, thereby to injure the said Ellen H. Clark.

"In the superior court, before the jury were impaneled, the defendant moved to quash the indictment, 'because no one of the counts therein contained sufficiently sets forth an overt act toward the commission of the offense alleged to have been committed.' Barker, J., overruled the motion, and the defendant excepted.

"There was no evidence that the witness ever attempted to set fire to the barn in question.

"Morton, C. J. It is an indictable offense at common law for one to counsel and solicit another to commit a felony or other aggravated offense, although the solicitation is of no effect, and the crime counseled is not in fact committed. *Commonwealth* v. *Willard*, 22 Pick. 476; *Rex.* v. *Higgins*, 2 East, 5; *Rex.* v. *Phillips*, 6 East, 464; *Regina* v. *Ransford*, 13 Cox C. C. 9; *State* v. *Avery*, 7 Conn. 266. The first and second counts of the indictment in the case at bar allege with sufficient certainty that the defendant solicited one Thomas Stafford to burn the barn of one Ellen H. Clark, and set out an offense at common law.

"The evidence clearly tended to support these counts, and therefore the court properly refused to quash the indictment, and also properly refused the defendant's request for an instruction that, upon the evidence, the jury would not be authorized to convict him upon either count of the indictment.

"It is not necessary to consider whether the evidence at trial proved the offenses charged in the third and fourth counts of the indictment. The jury were instructed that they could not convict upon them, unless they found that the defendant paid the money to Stafford to induce him to fire the barn. This supported and proved the first and second counts, and therefore a general verdict of guilty was properly rendered, as the indictment alleges that the different counts are different descriptions of the same act. Upon such a verdict a judgment is a conviction of but a single offense, and is deemed to be upon that count which is good, and to which the evidence is applicable. *Commonwealth* v. *Fitchburg Railroad*, 120 Mass., 372; *Commonwealth* v. *Boston & Maine Railroad*, 133 Mass., 383; *Commonwealth* v. *Nicholas*, 134 Mass., 531; *Commonwealth* v. *John E. Flagg*, 135 Mass. Rep., p. 545."

It has also been held, by Judge Cranch, in the Circuit Court of the District of Columbia, in the year 1834, that it is an indictable offense to incite a person to commit a misdemeanor, even though the same was not in fact afterwards committed. See *United States* v. *Lyles*, case No. 15,646, 26 Fed. Case, and 4 Cranch Circuit Court Reports, 461.

In an exhaustive note, to the case of *State of Washington* v. *James Butler*, reported in 25 L. R. A., page 434, Mr. Farnham discusses the question of solicitation to commit a crime

and announces the opinion that such solicitation is a crime
in itself.  He says:

"The true rule would seem to be that suggested by Judge Law-
rence in *Rex.* v. *Higgins,* 2 East, 5, who made the question of indict-
ability depend upon whether or not it is prejudicial to the community.
This would have to be determined by the average sense of the com-
munity, which is the ultimate source of all human law.  Of course
the average sense of communities will differ, but no more than on
any other different question."

The commentator further states that:

"One consideration, however, is manifest in all the cases, and that
is that the offense proposed to be committed by the counsel, advise
or inticement of another is of a high and aggravated character, tend-
ing to breaches of the peace, or other great disorder or violence, being.
what are usually considered *mala in se,* or criminal in themselves, or
in contradiction to *mala prohibita,* or acts otherwise indifferent than
as they are restrained by positive law."

The cases cited and collated in this note amply sustain
the proposition that it is immaterial whether or not the soli-
citation made was effectual or ineffectual, or resulted or not
in the commission of the crime which was advised.

A recent case decided in the year 1892, by an eminent
State court of last resort, reviews former cases and discusses
at length the question now under consideration.

In that case the distinction between soliciting another to
commit a felony and attempting to commit a felony is sharp-
ly and distinctly drawn.  In the opinion of the Supreme Court
of South Carolina, in the case of *State* v. *Bowers,* reported in
15th book of L. R. A., pages 199, 200 and 201, which is the
one alluded to, the defendant was indicted for soliciting
another to commit the crime of arson, the charge in the in-
dictment being that:

"The defendant wilfully, unlawfully and maliciously did solicit,
entice and endeavor to persuade one Thompson Mayer, feloniously,

wilfully and maliciously to set fire to and burn down a certain house, to wit, the dwelling house of one Anderson G. Mayer,'' etc.

Defendant's counsel moved to quash the indictment, it being admitted in the argument that the house had not been set on fire, and the motion was granted. The trial judge seemed to have the matter somewhat confused in his mind, and failed to draw the distinction between a solicitation to commit an offense and an attempt to commit an offense. The Supreme Court says that:

''It is not denied that an attempt to commit a felony is an indictable offense, and therefore the inquiry here is narrowed down to the question whether soliciting another to commit a felony accompanied by an offer of a reward, and the delivery to the person so solicited of the means by which the felony may be committed, constitutes an attempt to commit a felony, where the offer is rejected, and the means furnished are not used for the purpose indicated.''·

The Court then continues:

''There is no doubt that there is some conflict of authority as to the question whether mere solicitation to commit a felony constitutes, of itself, an attempt to commit the felony; one of the leading text-writers on criminal law (Wharton) denying the proposition, while another standard text-writer (Bishop) supports it. But we need not go into that question here, for in this case the offense charged does not consist of the mere solicitation to commit a felony, but it is accompanied with acts, offering a bribe and furnishing the means with which the felony could be committed; and we think it is abundantly shown by the analysis of the authorities presented in the arguments of counsel for the state that, where the solicitation to commit the felony is accompanied by such acts as are charged, the decided weight of authority is in favor of the view that the offense is complete. This is in accordance with reason as well as authority.''

The court, however, dismisses this view of the case and, coming directly to the question presented in the case now before us, proceeds as follows:

''There is, however, another view of this case which will equally support the conclusions at which we have arrived. It will be observed

that the indictment (the material part of which is set out above), contains no formal charge of the offense known as an attempt to commit a felony, although it seems so to have been treated by the circuit judge, and hence we have so considered it in that light, in what has been said above. On the contrary, the offense charged is the solicitation of another to commit a felony, which seems to be treated in some of the cases as a different offense from that of an attempt to commit a felony.''

The court then reviews the opinion rendered in the case of *Stabler* v. *Commonwealth*, 95 Pa., 318, and says:

''In a note to the case just cited the conflicting views of Wharton and Bishop above alluded to are stated, and several cases are cited showing that solicitation to commit crime has often been punished as solicitation. We see also in standard authorities on criminal pleading forms of indictments for solicitation to commit a crime, as well as forms of indictments' for attempts to commit felonies, which are distinct and· different.'' (Referring to authorities.)

Then continuing, and deciding the 'very point at issue in the case now under discussion, the court says:

''If, therefore, the indictment in this case be regarded as an indictment for soliciting another to commit a felony, and not as an indictment for an attempt to commit a felony, we think it can · be sustained if its allegations are established by the proof.'' *Rex* v. *Higgins*, 2 East, 5; *People* v. *Bush*, 4 Hill, 133; *State* v. *Avery*, 7 Conn., 266, 18 Am. Dec. 105, and other cases cited in 1 Bishop Crim. Law, 7 Ed. Sec. 767 *et. seq.*

''It seems to us therefore that the circuit judge erred in his ruling, and in granting the motion to quash the indictment.'' (*State* v. *Bowers*, 15 L. R. A., p. 199, decided by the Supreme Court of South Carolina on the 11th of February, 1892.)

Certainly the very able opinion in this case establishes beyond all doubt, by reason and authority, the principle, that counseling, or soliciting, or inciting the commission of a crime, either a felony or a misdemeanor, is a complete and distinct offense against the law, independent of the fact that such counsel or advice may or may not have been acted upon or

carried into effect, by the commission of some overt act on the part of the person counseled, or solicited, or incited to commit the offense. The writing of this article, by the appellants, Dessús and García, and the publication of the same in the newspaper, *El Rumor Diario* was a general counseling and solicitation and incitation, on the part of the defendants, to all persons, and especially to Mr. Padilla, who is mentioned therein, and to the persons on behalf of whom the telegram was sent, to commit the offense of riot, which is a misdemeanor and of murder, which is a felony under the statute law, and it matters not, under the decisions heretofore referred to, whether they acted upon that counsel or advise or not, or whether they ever actually received it or not by reading the article, the offense, with which defendants are charged, was complete when the counsel was given, and the prescribed punishment should follow the crime.

But the error of holding that the crime or offense of inciting anyone to commit a misdemeanor is not complete unless the misdemeanor is actually committed as a consequence of the advice or counsel given, would be intensified, when we consider that, according to section 359 of the Penal Code, it is not necessary in order to constitute the crime of riot that any act whatever should take place further than a threat to use force or violence disturbing the public peace, if accompanied by immediate power of execution. Certainly the article published in the newspaper constitutes a threat to use force or violence, as well as advice and counsel so to do, and in this particular offense—that is to say, a riot—the crime is complete, even under the erroneous view taken by some persons, that the act so advised must be actually committed, in consequence of the advise given, in order to complete the offense denounced in section 47 of the Penal Code.

A few more words in regard to the information. The first lines of the information charge the crime of counseling a riot, and the allegations of the document, immediately following, setting out how the offense was committed, were

merely explanatory but not necessary to the vigor of the accusation. And in the last lines of the information the statutes which were violated are referred to and applied to the facts which are charged as constituting the crime. Certainly, the defendants cannot claim that they were not sufficiently notified of the offense which they are charged with committing. The information under the statutes of Porto Rico must be held to be sufficient.

This discussion is probably extensive enough so far as the law applicable to this case is concerned. What do we have to say in regard to the facts? Under the statute no act, criminal or otherwise, was needed to follow the counsel given. The offense was complete, on the publication of the incendiary article, without any subsequent act on the part of another person following the advice. How it can be said, much less gravely maintained by the defendants in this case, that no crime was proven on the trial, passes my comprehension. The production of the published article hereinbefore set out at length, which is not and cannot be denied, fully proves the charge made. But in addition to the publication the following testimony of witnesses appears in the record and merits consideration.

The witnesses for the prosecution testified substantially as follows:

Captain Francisco Cabrera of the Insular Police stated that on May 27, he being in Arecibo, there was a meeting at which an article in a San Juan newspaper was read, and which article in which the accused, who were arrested for beating Police Officer Quijano, were incited to riot, one man by the name of Rosado having been killed, that as the prisoners were being conducted to jail a man was arrested in front of the house of Roses, who was saying: "That is the way to do, head for a head, life for life," as the newspaper said; witness read the *Rumor Diario* which was largely circulated there, and was read in nearly all public places; that in the tobacco factory "La Cubana" the people shouted applauding

the article which has been referred to; witness stated that he had gone to Hato Viejo after the meeting was over and everything had passed, not having seen anything that occurred personally.

José Inés Gómez, Municipal Judge of Arecibo, stated that on account of a wounded policeman having presented himself to him, he went to Hato Viejo on the date above mentioned; that he there instituted proceedings which he was called upon to do by virtue of his office; that there was one dead and several wounded, among them the policeman; that in all public places, and especially in the cigar factory, there were to be found copies of the article published in the *Rumor Diario;* that he does not know that the article referred to was read at Hato Viejo; that in the proceedings instituted by him a witness had testified that the article had not been read there.

Nicomedes Rivera, a member of the Federation of Laborers, testified that he declared a strike of the laborers or agricultural hands in Arecibo; took part in various meetings; and in that held in Hato Viejo, at which meeting no paper was read; that away from the meeting and in the Carretera there was a dispute among citizens and the police, because some persons who had been arrested refused to go with the police, several persons, being wounded, and among them a policeman, Quijano, and a private citizen who afterwards died, and who was called Rosado; that the *Rumor Diario* circulated in Arecibo and contained an article entitled "Life for life and head for head"; that the disturbance occurred at a fair distance from the meeting, and that he only saw Rosado when he attacked the Policeman Quijano; that Manatí and Barceloneta belong to the district of Arecibo.

Horacio González Santos, the agent of *El Rumor Diario* in Arecibo, received the copy corresponding to the 24th of May of this year, in packages of 15 or 20 copies, which he distributed among the subscribers; that he was told that an employee of the *Federación* was selling copies of the paper.

Francisco Gabriel, a laborer, stated that he did not work

during the strike which occurred in the month of May; that he sold the newspapers called *El Rumor Diario* on the 27th of that month which were given him by Iglesias; that he did not know whether he sold the copy containing the article in question, as he does not read.

Ramón T. Quijano, insular policeman, testified that he arrested a man who was threatening the laborers and trying to prevent them from working; that the prisoners revolted; and that they wounded him from behind, one Rosado being killed; that the arrest was made on the Utuado Road, and that there was a meeting near the road; that the prisoners revolted on reaching the entrance to the meeting and attacked him; that the prisoners were not at the meeting but on the road.

Manuel J. Boneta, secretary of the district court, testified that in the trial had before the said court against the accused, Vendrell, Hernández, Rivera, Santaña and Genero Torres, the jury pronounced them guilty with the exception of one, and at this trial the Policeman Quijano testified in regard to the wounds he sustained; that the jury had found the defendants guilty of the crime of assault and battery with aggravating circumstances.

The witnesses for the defendant testified substantially as follows:

Pedro García Andújar, cigar maker from the cigar factory "La Cubana" testified that several newspapers were read in the factory, and among them the *El Rumor Diario;* that on the 27th of May he attended a meeting at Hato Viejo, having spoken at the same, and that the *Rumor Diario* was not read there, and that the said newspaper was not commented upon; that there was a disturbance at which Quijano was wounded, and that one Rosado died; that there was a strike at Arecibo, Manatí and Barceloneta, towns which belong to the district of Arecibo, as well as Camuy.

Guillermo G. Rojas, cigar maker "La Cubana", testified that in said factory several papers were read, and among

others, the *Rumor Diario;* that he was present at the meet ing in Hato Viejo on the 27th of May, in which he took part; that the *Rumor Diario* was not read there, and that no one spoke of it; that he was in the office counting receipts when he heard a gunshot, and on asking was told that it was a disturbance which had been created between the police, but when he went out he saw the people scattering; that he was that day arrested in the town of Arecibo; that he was not on the Carretera when the incident occurred; that in the meeting Nicomedes Rivera spoke in regard to some *peones* coming from the *barrio* of Don Alonso; that they were crowding on a bridge in the turn of the road; that he did not know why they were crowding, and that they were not members of the *Federación Libre.*

As to the question, which is not deemed necessary to a conviction, of whether or not the advice brought about the riot, the evidence is not entirely satisfactory. There is at least a slight conflict on this point; that for the prosecution being mainly circumstantial. But under the rule laid down by this court in the case of *The People of Porto Rico* v. *D. Díaz,* alias *Leña Verde,* decided on the 6th day of March, 1907, the decision of the jury and the trial court on questions of fact cannot be reversed in this court, unless it is clearly erroneous or the result of prejudice or passion. Certainly there is nothing in the record to indicate such a state of things in the case at bar. No complaint is made of the verdict or judgment on any such ground, either here or in the court below. Then we should be very loath to disturb the verdict and judgment for lack of proof, even if there were a lack, which in our view of the case there is not.

The necessary facts of the case are few and decisive. As to the essential elements of the crime there is no obscurity in the proof whatever. The offense has been committed. The defendants have been clearly and unequivocally proven guilty as charged and no error appears in the record.

Any objections to the judgment of conviction, which could

possibly be suggested, in the consideration of this case, are merely those arising from procedure, and under the act of 30th of May, 1904 (see Session Acts of 1905, p. 10), this court is prohibited, in such cases from reversing the judgment of the trial court where the rights of the accused have not been in any way injured. No showing whatever of this sort is made here on behalf of the appellants, nor does it so appear from a careful examination of the record. No complaint that any of their substantial rights have been disregarded is made nor can be made on behalf of the accused. All criticisms of the judgment are merely technical, and the acts constituting the offense charged are not denied or doubted, nor can they be. Under such circumstances the judgment of conviction should not be disturbed. See the case of *The People of Porto Rico v. Rodríguez,* decided by this court on the 11th of March of this year.

These defendants have been properly indicted, fairly tried and duly convicted, and the appeal in this case after a careful review of several months, should terminate in an affirmance of the judgment rendered by the court below.

Under the law and the facts of this case the judgment rendered by the District Court of Arecibo therein on the 26th of July, 1906, ought not to be reversed or modified; and it is accordingly affirmed.

*Affirmed.*

Chief Justice Quiñones and Justice Figueras concurred.
Justices Hernández and Wolf dissented.