## THE STATE v. ELIZABETH BAKER, Appellant.

### Division Two, February 23, 1923.

1. **PRINCIPAL: Secretly Burying Child: Accessory.** Under the statute (Sec. 3246, R. S. 1919), declaring that "every woman who shall be delivered of a child, and shall endeavor, privately, by drowning or secretly by burying the same, or in any other way, directly or indirectly, so that it may not be known whether it was born alive or not," etc., only the mother of the child can be a principal in the first degree, and she must have participated in the secret burial of the child before others can be convicted as accessories before the fact. To sustain a conviction under this statute the mother of the child must endeavor to conceal its birth, by secret burial, by participating therein in some manner, either actively, or by advising it, or in some common design.

2. ———: ———: ———: **Failure of Evidence.** Where there is a total absence of evidence that the mother of the child, buried by defendant and others in a chicken yard twelve hours after it was born, either buried it or assisted in its burial, or advised or counseled its burial, or that it was buried in pursuit of a common

design between her and such others, a conviction of defendant, who was not the child's mother, cannot stand, although she may have desired to keep the birth secret and endeavored to do so. Under the statute the mother alone is the principal, and without a principal there can be no accessory.

3. ———: **Accessory: Conviction.** A defendant cannot be convicted as an accessory under a statute which makes only one person a principal, where the evidence fails to show the guilt of the principal.

Appeal from New Madrid Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED AND REMANDED.

*W. H. Grissom* for appellant.

(1) Instruction numbered 3 given by the court of its own motion was error, because it permitted the jury to find that Albert Baker and Elizabeth Baker could have committed the crime without the participation of Essie Vance. Sec. 3246, R. S. 1919. (2) The court erred in refusing to sustain defendant's demurrer offered at the close of the State's case and again offered at the close of the case.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) Where an offense can be committed by one person only, others who aid and abet in its commission may be charged with and convicted of the offense, if there is evidence tending to show the guilt of the principal offender. Where there is no evidence, as to this case, tending to show the guilt of the one who under the statute must be a party to the offense, a demurrer to the evidence should be sustained. Sec. 3246, R. S. 1919; 12 C. J. 380, and notes; Reg. v. Bate, 11 Cox, C. C. 686. (2) Instruction 3 given by the court was error, because it permitted the jury to find that the appellant could have committed the crime without the acquiescence

or participation of the mother of the child.    Authorities supra.

DAVIS, C.—Appellant was jointly charged with her daughter, Essie Vance, and her husband, Albert Baker, on August 30, 1921, in an information filed in the Circuit Court of New Madrid County, with the offense of privately or secretly burying a child, to conceal the birth thereof, so that it may not be known whether it was born alive or not.

Being granted a severance, appellant was tried separately on the 26th day of September, 1921, before the court and a jury, was found guilty and her punishment assessed at imprisonment in the penitentiary for a term of two years.    The evidence tends to show that, on July 25, 1921, and long prior thereto, Albert Baker and Elizabeth Baker, his wife, the defendant herein, Essie and Bessie Vance, daughters of this defendant by a former marriage, and Mamie Baker, daughter of Albert Baker by a former marriage, lived together on a farm near Gideon, New Madrid County.    Albert Baker employed several hired men on the farm, and at this particular time had five men working for him, all of whom took their meals with the family and slept in a small cottage some yards from the family home.

On the night of July 25, 1921, Essie Vance gave birth to a child.    There was no doctor present, but there was evidence tending to show that the defendant, Elizabeth Baker, requested Albert Baker to go for a doctor, and that Albert Baker caught a horse, saddled it and rode away, but came back later without the doctor. The child was born between nine and ten o'clock p. m.    There had been no provision made for medical attention or nursing, and with no other person able to take charge, the defendant acted as midwife and cared for the mother and baby. The child was born alive, and lived until some time between 11:15 and one o'clock the next day, at which time the mother called to appellant to come there, for it didn't look like the baby was breathing, and she believed it was dead.    All the members of the family saw the baby

alive.   The morning and noon of July 26th the five hired
men took their breakfast and dinner in the adjoining
room to where the baby and its mother were, with nothing
between the dining room and the bedroom where the
child lay, except a thin partition wall.   Although the
baby cried a great deal, there is no testimony that the
hired men heard it cry.   After the child's death, it was
taken from its mother and prepared for burial by ap-
pellant, Marie Baker and Bessie Vance.   In the mean-
time, Albert Baker had prepared a grave in the chicken
house, and when it was finished, appellant carried the
body to the back door and delivered it to Albert Baker,
her husband, who put it in the grave and covered it with
earth.

The information was based on Section 3246, Revised
Statutes 1919, which is as follows:

"Sec. 3246.   Every woman who shall be delivered of
a child, and shall endeavor, privately, by drowning or
secretly by burying the same, or in any other way, direct-
ly or indirectly, to conceal the birth thereof, so that it
may not be known whether it was born alive or not,
shall be deemed guilty of a felony, and shall, upon con-
viction, be imprisoned in the penitentiary not more than
seven years."

If appellant be punished, under the facts in this
case, it must be because her offense is within the scope
of Section 3687, Revised Statutes 1919, as accessory be-
fore the fact.

Section 3246, Revised Statutes 1919, defines the first
degree principal.   All others are principals in the sec-
ond degree, or accessories.   The statute also defines the
offense, as the secret burial, privately, by the mother of
the child, so that it may not be known whether the child
was born alive or not.   Construing this section, its
interpretation leads us to the positive conclusion that
only the mother of the child may be principal in the first
degree.   If, therefore, the mother of the child may be
the only first degree principal, as defined by the statute,
she, as principal, must have participated in its secret

State v. Baker.

burial, before others can be convicted as accessories. To convict one as accessory, you must have a principal; conversely, without a principal, there is no accessory.

A similar statute, of early English origin, interesting perhaps, and comments thereon, are found in 1 East, Pleas of the Crown, 228, as follows:

"By the Stat. Jac. 1. c. 27, it is enacted, 'that if any woman be delivered of any issue of her body, which being born alive should by the laws of this realm be a bastard; and that the endeavor privately either by drowning or secret burying thereof, or any other way, either by herself or the procuring of others, so to conceal the death thereof, as that it may not come to light whether it were born alive or not, but be concealed; in every such case the said mother so offending shall suffer death as in case of murder, except she can prove by one witness at the least, that the child whose death was by her so intended to be concealed was born dead.'

"This, being a very severe law, has been always construed most favourably for the unfortunate object of accusation, If she called for help, or confessed herself with child, she is not within the construction of the statute; and then it will lie on the prosecutor to prove that the child was born alive and murdered. Upon the same principle evidence is always allowed of the mother's having made provision for the birth, as a circumstance to show that she did not intend to conceal it. And even the presence of an accomplice has been holden to take the case out of the statute. Jane Peat was indicted for the murder of her bastard child, and Margaret Peat her mother was indicted at the same time for being present aiding and abetting. It appeared that the prisoner Jane when in labour was heard by persons in an adjoining room to call to her mother, who was present with her. HEATH, J., held that this took the case out of the statutes; for if any person be present, although privy to the guilt, 'there can be no concealment by the mother within the statute, and the case stands as at common law,' And there being no evidence of guilt but the concealment by both the prisoners, they were acquitted by his direction."

The foregoing English statute was probably re-pealed, for in 9 Geo. 4, c. 31, s. 14, we find a statute, similar to Section 3246, in substance as follows: "If any woman shall be delivered of a child, and shall, by secret burying, etc., endeavor to conceal the birth thereof, every such offender shall be guilty of a misdemeanor."

This statute has been construed in several English cases. In Reg. v. Waterage, 1 Cox, Cr. Cases, 338, it was said: "As the offense created by the statute was con-cealment by the mother, that fact must be proved before an accessory could be convicted."

In Reg. v. Bate, 11 Cox, Cr. Cases, 686, the court held: "The indictment alleged that Emma Bate was delivered of a female child, and that Emma Bate, Fanny Bailey and Eliza Anslow, afterwards, secretly cast the dead body of said child into a certain pit shaft, and secretly disposed of it, and endeavored to conceal the birth there-of. The prosecution admitted that the only evidence, certainly, is that she admits having been delivered of a child, but does not know what became of it. The court said: 'That will not do. You must show that the child was taken away at her request or privity. She says that it was taken right away and she does not know where it was put. I think therefore there is no evidence against Bate.'"

In Reg. v. Skelton, 3 C. and K. 119, l. c. 120, the court instructed the jury that: "It must be made out to your satisfaction, not only that she wished to conceal the birth, but was a party to carrying that wish into effect by the agency of Henry Batting, in pursuance of a common design between them; and if you should ac-quit her, the case fails as to both the defendants."

To the same effect is Reg. v. Bird, 2 C. and K. 817.

In Frey v. Commonwealth, 83 Ky. 190, l. c. 192, regarding a similar statute, the court said: "The stat-ute making accessories before the fact liable as princi-pals, was designed to apply only in cases where the of-fense existed at the common law, or where created by statute, applies to all who are guilty."

In State v. Sprague, 4 R. I. 257, 1. c. 264, the court said: "The participation in the offense by the mother, as the principal offender, seems to us, therefore, essential to constitute this offense. . . . There can, however, be no crime, under the statute, unless the mother of the bastard is, in a legal sense, one of the agents in it, . . . and she alone, from the statute definition, can be the principal offender, others being liable only as counsellors, aiders, abettors and procurers of her crime."

We are satisfied from the foregoing authorities, as well as the statute, that, before appellant can be properly convicted, the mother of the child must have endeavored to conceal the birth thereof, by secret burial, participating therein, in some manner, either actively, advising it, or in some common design.

Referring to the statement of fact, there is a total absence of proof that the mother, Essie Vance, either buried or assisted in the burial of the child. She neither counselled nor advised it. By no word, act or common design, so far as the record shows, did she endeavor to secretly bury it, so that it might not be known whether it was born alive or not. The record does not tend to show, by any conversation or sign, that she advised its burial or approved of it, or that it was to be buried in the chicken house or any other place. It may be that she knew the dead child was removed from her room, but no testimony, directly or by inference, that she had any knowledge of the disposition of the body. At the time of birth, the blinds were pulled down, but there is no evidence that the mother knew of it or authorized it, but had she known or authorized it, it would not inferentially show a guilty *scienter* of the acts later charged.

The statute does not contemplate that the mother herald the event. Had she done so, the circumstance would favor her. However, there was no opportunity to do so in this case, as the child died about twelve hours after birth, and we may assume that she was, at the time of the secret burial, confined to her bed. The record does not tend to show visitors to the house, much less to

her room. The hired men were in the house, but it is improbable and unnatural to assume that the sick mother, within twelve hours after the birth of her child, would call hired men to her bed chamber. There is little doubt but that appellant and her husband desired to keep the birth secret and endeavored to do so. Their acts, without acquiescence, at least, may not be imputed to the mother of the child. It is indisputable that the members of the family knew of the child's birth. Opportunity, however, on the part of the mother of the child, to inform neighbors of the child's birth or burial, or any inquiry of her, or denial by her relative to it, does not appear. It may be assumed that Essie Vance learned of the secret burial, after the exhumation of the body, but knowledge, from the history of the act, may not retroactively be made the basis of a criminal charge.

II. Appellant complains of instruction numbered 3 given by the court of its own motion, for, that, it authorizes the jury to convict appellant if *either* or both of the other defendants, Essie Vance or Albert Baker, did the things enumerated in instruction numbered 1. This instruction is clearly erroneous. Essie Vance was the principal defined by statute; Albert Baker an actor. You may have an accessory only, where the testimony tends to show participation in the act by a principal. You may not convict an actor as accessory under this statute, where the evidence fails to show the guilt of a principal. That is to say, the *corpus delicti* has not been shown. This instruction should not have been given.

We, therefore, are of the opinion that the court erred in submitting the cause to the jury, and in refusing to give the instructions, offered by appellant at the close of the State's evidence and the whole case, to acquit.

The judgment is reversed and the cause remanded for such proceedings by the trial court, as are not inconsistent herewith. *Railey* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion of DAVIS, C., is hereby adopted as the opinion of the court. All of the judges concur.