THE STATE v. CARL B. DAVIS, Appellant.—6 S. W. (2d) 609.

Court en Banc, May 18, 1928.

*McAllister, Humphrey & Pew* and *C. Fletcher Douglass* for appellant.

*North T. Gentry*, Attorney-General, and *L. Cunningham*, Assistant Attorney-General, for respondent.

DAVIS, C.—Defendant was convicted on May 29, 1926, after a three days' trial of an attempt to commit murder in the first degree.

The jury returned a verdict fixing his punishment at imprisonment in the penitentiary for a term of eight years, which the trial court reduced to five years, sentencing him to that term. Defendant duly appealed from the judgment entered accordingly.

On the hearing before us defendant accepted the facts as outlined by the Attorney-General in his brief as a true recital of the evidence adduced. The evidence submitted on the part of the State warrants the finding that defendant and Alberdina Lourie resided in Kansas City. They were seemingly infatuated with each other, planning and arranging to have Edmon Lourie, the husband of Alberdina, killed, so that they could obtain the insurance on his life, aggregating sixty thousand dollars, as well as cohabit. Edmon Lourie was absent from home the greater part of the time, returning at intervals of two or three weeks. In furtherance of their plan defendant, acting for himself and Alberdina, arranged to have one Earl Leverton obtain for them the services of an ex-convict to murder Edmon Lourie for hire. Leverton, instead of procuring the services of an ex-convict for that purpose, disclosed the plot to Joel L. Dill, a member of the Kansas City police force, who agreed to pose as an ex-convict to that end. Several meetings were had between defendant, Leverton and Dill, defendant stating that he and Alberdina were in love and desired Edmon Lourie killed. He agreed to pay for the execution of the plot. Defendant outlined his plan, offering Dill the sum of six hundred dollars, with the further agreement that Alberdina, who was to be with her husband at the time of the contemplated assault, would wear diamonds of the value of three thousand dollars. He further arranged for Alberdina and Dill to see each other, that each might recognize the other on sight. Defendant, Dill and Leverton during January and the early part of February, 1926, held prearranged conferences on the subject. Prior to February 11, 1926, defendant arranged for Dill to go to Chicago to kill Edmon Lourie there, defendant making and giving Dill a map or drawing showing where Lourie could be found, as well as two photographs of him. The arrangements contemplated that if Dill was unable to locate Lourie, Alberdina would go to Chicago to aid him. The trip to Chicago was to be made about February twelfth. However, Edmon Lourie telegraphed Alberdina that he would return to Kansas City on February 13, 1926, defendant thereupon notifying Leverton, who in turn communicated the fact to Dill. Defendant paid Dill six hundred dollars, advising him that Alberdina would persuade Edmon to accompany her to a place of amusement and that she planned to leave their home at eight o'clock P. M. on February 13, 1926. It was further planned that Alberdina was to carry the diamonds on her person, and that Dill was to shoot Lourie either as they left their home or as they returned, and that Alber-

dina was to be mussed up and the diamonds taken from her, so that it might appear the result of a robbery. Alberdina was to appear to faint, giving Dill time to make his escape. However, on the night of February 13, 1926, Dill, accompanied by three other police officers, proceeded about eight o'clock P. M. to the home of Edmon Lourie as arranged. Edmon and Alberdina Lourie were there found dressed and ready to leave, with the diamonds on her person. As Dill and the officers entered the room, she turned her face to the wall as planned. Two officers took charge of Edmon and Alberdina, Dill and the other officer going to the home of defendant, where they arrested him. The defendant had previously informed Dill that he would remain at home in order to have an alibi.

Upon his arrest defendant made and signed a confession in which he stated that he and Alberdina planned to have Edmon Lourie killed. In pursuance to the plan he met Dill, whom he assumed to be an ex-convict and the subject of hire for the purpose intended. The day before the contemplated murder he gave Dill two hundred dollars, and four hundred dollars the day the murder was to be consummated, together with a picture of Edmon Lourie. It was arranged that Dill was to go to Chicago to kill Lourie. Lourie, however, unexepectedly arranged to go home, notifying Alberdina of his intention by telegram. Thereupon Alberdina informed defendant of the fact, whereupon he notified Dill, resulting that the scene of the contemplated murder was changed to Lourie's home in Kansas City. The arrangements contemplated that Alberdina was to accompany Lourie that night to a picture show, and Dill was to stage a hold-up and kill Lourie. Alberdina agreed to remove the diamond rings from her fingers, giving them to Dill, and he was to retain them as part payment for the murder of Lourie. Lourie masqueraded under different names, among them Lourie, Frank, Payne and Edmonds, Alberdina telling defendant that she thought he was a master mind among criminals. The confession was made on the night of February 13, 1926. The evidence establishes that all of the acts complained of occurred in Kansas City, Jackson County, Missouri, during January and February, 1926.

The evidence on the part of defendant tends to establish that defendant was urged to agree to the arrangement by Dill and Leverton, but that after paying the money he abandoned the crime before an overt act was committed. There was also testimony that Alberdina, the co-conspirator, abandoned the plot, which abandonment was communicated to Dill and defendant. Defendant was addicted to drink and had been an inmate of a sanatorium. It was asserted that all these facts were known to Dill and Leverton, who purchased and gave him liquor while persuading him to continue the plot. Such other facts as we find pertinent, if any, will later be noted.

Section 3683, Revised Statutes 1919, upon which the indictment and prosecution are based, reads: "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction thereof, shall, in cases where no provision is made by law for the punishment of such attempt, be punished as follows." The remaining portion of the section sets forth the punishment prescribed, which it is unnecessary to recite.

The sufficiency of the evidence to sustain the conviction is raised. The defining of an attempt to commit a crime and the ascertaining of its essential elements is necessary in the consideration of the question. 16 Corpus Juris, page 112, in defining an attempt, says: "An attempt to commit a crime may be defined as an act done in part execution of a criminal design, amounting to more than mere preparation, but falling short of actual consummation, and possessing, except for failure to consummate, all the elements of the substantive crime, so that, if not prevented, it would have resulted in the full consummation of the intended crime." The elements of an attempt are stated in 16 Corpus Juris, page 113, thus: "An attempt to commit a crime consists of three elements: (1) The intention to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission."

The proof adduced advises us that the only debatable question is the presence of sufficient facts to demonstrate the second element. The record develops the presence of the intent to commit the crime and the failure to consummate its commission. We therefore dismiss the first and third elements of an attempt from further consideration. However, as there must be coincidence as to every element of the offense, the lack of one essential element demonstrates a failure to commit the crime of attempted murder. Our sole inquiry then relates to the performance of some act upon the part of defendant toward the commission of the crime.

The physical overt act, which, with intent and failure to consummate, brings the crime of attempt into existence, is distinguishable from solicitation and preparation. An attempt to commit a crime involves an act on the part of the defendant moving directly toward the commission of the offense. With these concepts in mind we proceed to review the solicitations and preparations by defendant to murder Lourie as constituting an overt act.

In State v. Hayes, 78 Mo. 307, this court through PHILIPS, C., said: "It is the recognized law of this country that the solicitation of another to commit a crime is an act toward the commission." How-

ever, the proof in the above case developed in addition to solicitations an act on the part of the accused extending beyond solicitation or preparation, that of saturating a portion of the floor with coal oil as well as the furnishing of plans and an oil can. Conceding that the court reached the proper result in that case, concerning which it is unnecessary to express an opinion, the basic facts there shown extend far beyond the facts here developed. While a few of the courts have treated solicitation to commit a crime as an attempt, the great weight of authority warrants the assertion that mere solicitation, unaccompanied by an act moving directly toward the commission of the intended crime, is not an overt act constituting an element of the crime of attempt. Solicitation of itself is a distinct offense when declared so by law. [16 C. J. 118; 8 R. C. L. 277.] Therefore, in conformity with the weight of authority, we hold that merely soliciting one to commit a crime does not constitute an attempt.

The State contends that the arrangement of a plan for the accomplishment of the murder of Lourie and the selecting and hiring of the means or instrumentality by which the murder was to be consummated were demonstrated. We take it that the State means by the foregoing declarations that overt acts were shown. To that we do not agree. The evidence goes no further than developing a verbal arrangement with Dill, the selection of Dill as the one to kill Lourie, the delivery of a certain drawing and two photographs of Lourie to Dill and the payment of a portion of the agreed consideration. These things were mere acts of preparation failing to lead directly or proximately to the consummation of the intended crime. In this regard we have found no authority which holds that preparations constitute an overt act.

The distinguishment between the overt act and preparation is stated by FIELDS, C. J., in People v. Murray, 14 Cal. 159, reading: "Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made."

In Reg. v. Taylor, 1 Fost. & F. 512, the court say: "The act to constitute a criminal attempt must be one immediately and directly tending to the execution of the principal crime, and committed by the prisoner in such circumstances that he has the power of carrying his intention into execution."

The plans or arrangements amounted to nothing more than mere preparation. The contract of hiring entered into between defendant and Dill also fails to extend beyond mere preparation. In regard to the hiring the trial court instructed the jury that the payment of

money by defendant to Dill to commit the intended crime did not constitute such an overt act as was tantamount to an attempt. The ruling of the court we think was right, for the payment of money was not an act moving directly toward the consummation of the intended crime. The only case we have found involving the actual payment of money to another as the consideration for the proposed crime is Reg. v. Williams, 1 Car. & K. 589, 1 Den. C. C. 39. In that case the facts develop the actual delivery of money to the agent who straightway went with the poison given him for that purpose to the home of the intended victims. However, on his arrival he disclosed to them the plan to kill, handing over the poison. The fifteen judges who considered the case on appeal held the conviction erroneous.

The employment of Dill as agent to murder Lourie was not tantamount to an attempt. Dill not only had no intention of carrying out the expressed purpose of defendant, but was guilty of no act directly or indirectly moving toward the consummation of the intended crime. He did nothing more than listen to the plans and solicitations of defendant without intending to act upon them. It was not shown that Dill committed an act that could be construed as an attempt. The arrest of Lourie, his wife and defendant as detailed in the evidence could not be said to be an act involving the consummation of the crime. [Ex parte Floyd, 95 Pac. 175; Hicks v. Commonwealth, 86 Va. 223, 9 S. E. 1024, 19 Am. St. 891; Stabler v. Commonwealth, 95 Pa. St. 318, 40 Am. Rep. 653; State v. Rider, 90 Mo. 54; State v. Baller, 26 W. Va. 90; People v. Youngs, 122 Mich. 292; McDade v. People, 29 Mich. 50; State v. Fraker, 148 Mo. 143, 49 S. W. 1017; State v. Harney, 101 Mo. 470, 14 S. W. 657.]

Whether it is necessary to make an actual assault before the crime of attempt can be said to come into existence, we need not decide, for the solicitations and preparations upon the part of defendant were not equivalent to an overt act which must take place before the crime of attempt comes into existence. In addition to the case of State v. Hayes, 78 Mo. 307, we have considered the case of State v. Mitchell, 170 Mo. 633, 71 S. W. 175, but do not think it is apposite to the facts here developed, for in that case the intended victim was absent from the bed where he usually slept when defendant, with intent to harm him, fired through the window into the pillow of the bed. In that case the proof shows an overt act which develops the crime.

Our statute, Section 3683, Revised Statutes 1919, in proscribing an attempt to commit an offense prohibited by law, is to be interpreted as providing that the doing of any act toward the commission of such offense shall constitute an attempt. The statute we think follows and coincides with common law in that respect. There must be an overt act before an attempt exists and the overt act must move direct-

ly in consummation of the crime, in other words, toward the commission of the offense. People v. Youngs, 122 Mich. 292, supports this ruling.

It follows from what we have said that the judgment must be reversed and the defendant discharged. It is so ordered. *Higbee* and *Henwood, CC.*, concur.

PER CURIAM:—This cause coming into Court en Banc, the foregoing opinion of DAVIS, C., in Division Two, is adopted as the decision of Court en Banc. *Graves, Atwood* and *Ragland, JJ.*, concur; *White, J.*, concurs in a separate opinion, in which *Blair* and *Gantt, JJ.*, concur; *Walker, C. J.*, dissents in separate opinion.

WHITE, J., (concurring).—I concur in the conclusion reached in the opinion of DAVIS, C., and in the reasoning by which he reaches it. However, a principle of law, not referred to in the argument or the briefs, I think is decisive of the case.

Defendant was charged with an attempt to commit murder as accessory before the fact, under Section 3687, Revised Statutes 1919. He did not attempt to commit the crime himself, but hired Dill to do it. He might have been charged directly, but the proof would have been the same.

I. The principle of law is this: Where one hires or incites another person to do a criminal act, he is responsible only for what the other person *does*. The principle thus applicable is thus stated in 16 Corpus Juris, at page 134:

"There are several things that must concur in order to justify the conviction of one as an accessory before the fact: (1) That he advised and agreed, or urged the parties or in some way aided them, to commit the offense; (2) that he was not present when the offense was committed; (3) that the principal committed the crime."

And again (pp. 134-5):

"To constitute one an accessory before the fact, *it is of course essential that the felony shall have been in fact committed by the person whom the accused is alleged to have incited or counseled, etc., and under such circumstances* as to render *him* guilty. In other words, although the offense of the accessory is distinct from that of the principal, yet it is in judgment of law connected with it and cannot subsist without someone being guilty as principal. This principle, which is embodied in the maxim, *Accessorius sequitur naturam sui principalis,* appears at every point in the common-law rules regulating the indictment and trial of accessories."

A few cases illustrative of that doctrine would show the extent to which it is applied. Ray v. State, 102 Ark. 594, is where a defendant

was charged as accessory before the fact in commission of murder. The court said, at page 596:

"The accessory cannot be guilty if the principal is not guilty; and he can be guilty of *no other or higher grade of crime* than that of which the principal is also guilty. . . .

"The guilt of the accessory before the fact is based and dependent upon the guilt of the principal; and if the principal has committed no crime, then the accessory is free from guilt. To charge an offense against the accessory, it is necessary to also charge an offense against the principal" (citing Wharton on Criminal Law, and other authorities).

In Harper v. State of Mississippi, 83 Miss. 402, defendant was charged with aiding and abetting a crime of murder. An instruction authorized the finding of defendant guilty if he was present at the time of the aiding and abetting the principal in killing the deceased. The court said:

"The error in this instruction is glaring and manifest. . . . It omits all mention of the intention, malice or premeditation of McCormick [the principal] in killing deceased."

The court goes on to reason that the person who actually did the killing might have acted in self-defense or killed by accident, or been guilty of manslaughter; that although the defendant, accomplice, aided and abetted the act, he could not be guilty unless the principal was guilty to the same extent.

In the case of Stoops v. Commonwealth, 10 Am. Dec. (Pa.) 482, the plaintiffs in error were indicted as accessories before the fact for the crime of burglary. The court said, at page 483:

"The offense of the accessory, though different from that of the principal, is yet, in judgment of law, connected with it, *and cannot subsist without it.*"

In Gene Hall v. State, 52 Tex. Crim. 250, defendant was charged as being an accomplice in the crime of burglary. The court said (l. c. 253):

"It is not a violation of the law with reference to the conviction of an accomplice that he simply furnished the means, advised or aided; there would be no offense unless the offense in contemplation was subsequently committed."

In Brooks v. State, 103 Ga. 50, one was charged as accessory before the fact with murder. The court said (l. c. 52):

"It is therefore necessary, before one can be found guilty as accessory before the fact, that someone must not only be charged with having perpetrated the crime, but *the guilt of that person must be established.*"

In State v. Hickam, 95 Mo. 322, four defendants were jointly charged with an attempt to kill, and were convicted, Hickam as

principal, and the other three as aiders and abettors. The judgment was reversed. The court said (l. c. 332):

"Neither of these defendants (other than Hickam), however, could properly be convicted of the offense charged in the indictment, unless the jury found, either that there was a common purpose in the minds of Sam Hickam and such defendant to kill Davenport, and the shooting was done in the attempted accomplishment of such common purpose, or *that such shooting was done by Sam Hickam in the attempted accomplishment of a purpose in his mind to kill Davenport of which such defendant had knowledge,* and that she did some act in furtherance of the attempted accomplishment of such purpose, and a proper instruction on this branch of the case ought to have been given."

The part I put in italics states the principle applicable. One cannot be convicted as aider and abettor without a guilty principal.

In State v. Baker, 297 Mo. 249, the defendant was charged with secretly burying a child to conceal the birth thereof, contrary to statute. The court said (l. c. 252):

"If appellant be punished under the facts in this case, it must be because her offense is within the the scope of Section 3687, Revised Statutes 1919, as accessory before the fact. . . . To convict one as an accessory, you must have a principal; conversely, *without principal, there is no accessory.*"

That was concurred in by all of the judges of Division Two.

The case of State v. Hayes, 105 Mo. 76, is where the defendant proposed to one Hill the burglary of a store house. Hill consented, but notified the authorities. The two went together to the building, defendant raised the window and assisted Hill in getting into the building. Hill handed out a piece of bacon. This court said (l. c. 80):

"The trial court told the jury in this instruction that defendant was guilty of burglary, if he, with a felonious intent, assisted and aided Hill to enter the building, notwithstanding Hill himself may have had no such intent. In this we think the court erred. One cannot read this record without being convinced beyond a reasonable doubt that Hill did not enter the warehouse with intent to steal."

And at page 81:

"The act of Hill, however, was by the instruction of the court imputed to defendant. This act, according to the theory of the instructions, so far as Hill was concerned, was not a criminal act, but when it was imputed to defendant it became criminal, because of the latter's felonious intent. This would probably be true if Hill had acted under the *control* and *compulsion* of defendant, and as his passive and submissive agent. But he was not a *passive* agent in this transaction. He was an active one. He acted of his own volition. He

did not raise the window and enter the buiding with intent to commit crime, but simply to entrap defendant in the commission of crime, and have him captured."

Quoting from a Kansas case, the court added:

"'The act of a detective may, perhaps, be not imputable to the defendant, as there is a want of community of motive. The one has a criminal intent, while the other is seeking the discovery and punishment of crime.'"

The court then cites authorities and reasons at length upon the principle, too long to quote here.

The effect of the above authorities is that, in order to convict one as accessory before the fact of any crime, the criminal intent must be in the minds of both the accessory and the principal, and followed by the overt act in the commission or attempted commission of the crime.

II. But it is argued that the acts done by the defendant Davis, in this case, were of themselves an attempt to commit murder, independent of any act or intent on the part of Dill, his supposed agent. Counsel for the State in his argument suggests that it is an indictable offense at common law to counsel and solicit another to commit a felony, and that, under the statute, becomes an attempt to commit the felony. True enough that is an offense at common law. [16 C. J. 117.] It is also an offense at common law to *attempt* to commit a crime. [16 C. J. 111-113.] Likewise it is an offense at common law to become accessory before the fact to the commission of a crime. [16 C. J. 119.] The common law recognizes these three distinct offenses. The Attorney-General cites the case of Commonwealth v. Randolph, 146 Pa. St. 83, in support of his position. The defendant in that case was convicted of soliciting another to commit murder. That was charged as a distinct offense in itself. The court cites numerous cases in support of the position that soliciting another to commit a crime is of itself a crime. It is not classed as an attempt to commit a crime at all. The opinion cites, among others, the case of Stabler v. Commonwealth, 95 Pa. St. 318, reported in 40 Am. Rep. 653. The indictment there was in six counts, on two of which defendant was tried, the first and the sixth. The first charged a felonious *attempt* to poison one Waring with intent to commit the crime of murder. The sixth charged that the defendant wickedly solicited one Neyer to administer the poison to Waring. The evidence shows that the defendant solicited Neyer to put poison in Waring's spring, so that the latter and his family would be poisoned, and offered him a reward for so doing. He handed Neyer the poison and directed him how to place it. Neyer, however, refused to carry out the scheme. The defendant was convicted on

both counts. On appeal it was held that he was not guilty on the first count of attempt to murder, but he was rightly convicted on the sixth count for *soliciting* another to commit the murder. The court says, in speaking of the statute on the subject (l. c. 654):

"The act recognized and distinguished between intent and attempt. The former indicates the purpose existing in the mind, and the latter an act to be committed."

And further:

"In the present case it is contended that putting the poison into the pocket of the witness was an act sufficient to constitute the attempt, if Stabler expected and believed it would be used as he had requested."

And further commenting on the facts, the court said (l. c. 655):

"If, however, it was actually delivered with that intent, we do not think it constituted an attempt to murder under the eighty-second section of the Act of March 31, 1860."

That section, similar to ours, defined an attempt to commit a crime. The court then cites cases showing the distinction between an attempt to commit a crime and soliciting another to do it. Thus, the Pennsylvania courts, upon which the State relies, destroy the State's position.

Hicks v. Commonwealth, 86 Va. 223, 19 Am. St. 891, is where the accused, charged with attempt to murder, purchased poison and solicited one L to put it in the "Old Man's coffee," the old man being the intended victim. L had no intention to administer the poison. It was held that it was not an attempt to murder; that mere preparation did not constitute an attempt. The court said (l. c. 896):

" 'Merely soliciting someone to do an act is not an attempt to do that act' (citing an old case).

" 'In that case the agent was actually given money for his services, and immediately proceeded with the poison to the house of the intended victim; but upon his arrival there, he gave up the poison to them, and told them all about it. The prisoners were convicted, but at the ensuing term the case was considered by the fifteen judges, who held the conviction wrong.' "

And further:

"Here, undoubtedly, there was an intent to commit murder; but the acts done do not amount to anything more than the mere arrangement of the proposed measures for its commission."

That case and this are as like as two peas.

In the case of Hall v. State, 52 Tex. Crim. l. c. 253, the appellant was charged as an accomplice in a burglary, and the court said:

"It is not a violation of the law with reference to the conviction of an accomplice that he simply furnish the means, advised and aided; it would be no offense unless the offense in contemplation was subsequently committed."

Not a case has been cited, nor can one be found, I think, which would support the conviction in this case.

State v. Mitchell, 170 Mo. 633, is cited as one in point. There the defendant actually fired the shot with intent to kill, at the spot where he thought the victim lay. That was an overt act in pursuance of the attempt by the defendant himself.

In the argument we were directed to the heinous nature of the crime, where one, who is too cowardly to commit the act himself, employs someone else to do it. That is a serious offense, and no doubt many a crime is committed by a hired agent, but the master minds in the criminal world from whom that danger comes never make mistakes such as Davis made. They know their men and they employ real killers. Davis was not only a coward, but a fool. The entire plan and preparation showed the want of judgment and discretion. He has no criminal record, and he is not a dangerous criminal. If every person who, at some time in his or her life, entertained a criminal impulse, was put in jail, a small minority of us would be at large.

It is said further that the defendant in this case did all he could do in furtherance of the plan to have this murder committed. This is incorrect. He failed of many things he might have done—things absolutely necessary for the commission of the crime or its attempt. He might have used the weapon himself. He might have used sense enough to solicit a real criminal to commit the deed. He might have taken precaution to find out who the man was that he employed for the purpose. But blindly he picked up the first man who offered his services.

The upshot of the matter is this: The defendant had no intention to kill; that is, to commit the murder himself. Dill had no intention to kill. There can be no crime without a criminal intent, and neither the defendant nor his agent entertained an intent to do the deed. The defendant intended that Dill should do it, but that intent cannot be connected with an act of another which was neither done nor contemplated by the other. The intent to commit the crime must be in the mind of the man who is to commit the crime.

Of course, the defendant was guilty of soliciting another to commit the murder; a serious crime, but he was not charged with that nor convicted of that offense. We must determine cases upon the law as it is written, and as it has been adjudged for generations.

The judgment is properly reversed.

WALKER, C. J., (dissenting).—The charge against the defendant was based upon the following statute, so far as the same is definitory of the offense: "Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any

act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction thereof, shall in cases where no provision is made by law for the punishment of such attempt, be punished as follows:'' (this is followed by the punishment prescribed, part of Section 3683, Revised Statutes 1919).

''An attempt,'' as this court said in construing this statute, ''is a deliberate crime which is begun, but through circumstances independent of the will the action is left unfinished. It is such an intentional, preliminary guilty act as will apparently result, in the usual course of natural events, if not hindered by causes outside of the actor's will, in a deliberate crime. If the means are adapted to the end and there is an apparent physical ability to complete the attempt on the part of the attempter, then the case may be fairly made out.'' [State v. Bobbitt, 228 Mo. l. c. 264; State v. Mitchell, 170 Mo. 633; State v. Montgomery, 63 Mo. l. c. 298.] The presence of the essentials necessary to constitute the crime are threefold: (1) the intent; (2) the doing of acts towards the commission of the crime; and (3) the failure of their consummation. [State v. Fraker, 148 Mo. l. c. 162.] An intent may be inferred from all of the facts and circumstances in a given case. This rule finds its genesis in the fact that intent involves the purpose with which an act is done and requires an exercise of the will. [State v. Santino, 186 S. W. (Mo.) 976.] Intent, therefore, may be inferred from all of the facts and circumstances in evidence; and a sane man may be held to intend the usual and necessary consequences of his acts; and when he acts in a manner so as to produce a result prohibited by law, his thus acting may be regarded as proof of his unlawful intent in the absence of evidence to the contrary. Thus the first essential may be said to be established.

In determining whether there is proof of the crime we are authorized in considering the defendant's conduct throughout, from his first proven effort to the moment of his failure—due to no cause of his.

Proof of preparations alone to commit the crime will not, of course, constitute a violation of our statute. Its language renders the distinction clear between mere preparations and acts in attempts to commit crime. The first are but introductory and do not form a part of the offense; the second are constitutive and when shown to have been committed render the accused amenable to the statute. The language of the latter, after prohibiting attempts to commit a crime generally, adds: ''or to do *any act* toward the commission of an offense prohibited by law but shall fail in the perpetration thereof, and shall be prevented in the execution of the same upon conviction, shall be punished,'' etc.

Without limitation it may be said that the defendant did everything within the contemplation of malicious human ingenuity to enable the putative murderer to commit the crime, short of actual participation therein. He solicited the detective, Dill, to do the killing. In so doing he was guilty of a constitutive act within the terms of the statute. Thus defined the act became overt. [People v. Mills, 178 N. Y. 274, 67 L. R. A. 131.] Despite the contrariety of rulings elsewhere it is the recognized law in this State that the solicitation of another to commit a felony is an act towards its commission, without any other act being done, to warrant a conviction. [State v. Hayes, 78 Mo. l. c. 316.] The evil intent in the mind of the defendant—the existence of which is shown by all of his acts, imparts to the solicitations their criminality. Incidentally it may be said in this connection, that the party solicited may not have acquiesced or intended to share in the crime will not exonerate the defendant. [State v. Hayes, supra.]

I find that our statute was copied from that of New York, where it was held in People v. Bush, 4 Hill, 133, where an accused solicited another to commit the crime of arson and gave him some material for the purpose, that this was sufficient to sustain a conviction, although the person solicited did not intend to commit the offense. A like ruling was made by the Supreme Court of Georgia, whose statute was also modeled upon that of New York, in the case of Griffin v. State, 26 Ga. 493, in which it was said, citing with approval the New York case of People v. Bush, supra, that the fact that the person hired had no intention to commit the crime made no difference with the criminality of the accused. The intent of the hired could not lessen the crime of the hirer.

In Commonwealth v. Jacobs, 9 Allen (Mass.), 274, Judge GRAY said: "Whenever the law makes one step toward the accomplishment of an unlawful object, with the intent or purpose of accomplishing it, criminal, a person taking the step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that, by reason of some act unknown to him at the time of his criminal attempt, it could not be fully carried into effect in the particular instance." In the Jacobs case the defendant was charged with soliciting another to leave the state and enlist elsewhere in military service when the person solicited was not fit to become a soldier.

Recurring to rulings in this jurisdiction construing this statute (Sec. 3683), we find in State v. Sullivan, 110 Mo. App. l. c. 87, a very terse discussion by ELLISON, J., of the construction to be given to solicitations in a case as at bar. It there said:

"It has been at times suggested that to merely solicit the unlawful offense was not doing an act, and that the law could not notice a mere

desire unaccompanied by an act. But, manifestly, soliciting is an act. It is a step in the direction of an offense. [State v. Hayes, 78 Mo. l. c. 316; King v. Higgins, 2 East. 5; State v. Avery, 7 Conn. 267; 1 Bishop's Crim. Law, sec. 767.] And so it may also be said that some of the foregoing cases are for attempts to commit an offense and that they therefore do not apply to a case where there has only been a solicitation; it being contended that a solicitation is not an attempt. But it is. For the act of soliciting is an attempt to have the offense committed. Indeed, the case of King v. Higgins, supra, and several others, were cases of solicitation.

"Text-writers have laid down the law that to solicit the commission of an offense was indictable, without noticing any distinction whether the offense solicited was a felony or misdemeanor. [Bishop on Crim. Law, supra; Wharton on Crim. Law, secs. 179, 1857, 1858; 1 Russell on Crim. Law, 193, 194.] These writers look only to the character of the offense in its evil tendency and not to its technical designation. And so in a case from the Supreme Court of Illinois, much like the present, . . . it was held that, though there was no statute on the subject in that State, yet it was an indictable misdemeanor for an officer to propose to receive a bribe. The court said: 'According to the well-established principles of the common law, the proposal to receive the bribe was an act which tended to the prejudice of the community; greatly outraged public decency; was in the highest degree injurious to the public morals; was a gross breach of official duty, and must therefore be regarded as a misdemeanor, for which the party is liable to indictment. It is an offense more serious and corrupting in its tendencies than an ineffectual attempt to bribe. In the one case, the officer spurns the temptation, and maintains his purity and integrity; in the other, he manifests a depravity and dishonesty existing in himself, which, when developed by the proposal to take a bribe, if done with a corrupt intent, should be punished; and it would be a slander upon the law to suppose that such conduct cannot be checked, by appropriate punishment. [Walsh v. The People, 65 Ill. 58.]' "

The proof of defendant's guilt in the instant case is not limited to solicitations. He and his paramour, the wife of the intended victim, planned and directed with particularity, the time, manner and place of the proposed taking off of her husband. A trip to Chicago was even in contemplation to effect that end when the husband returned home unexpectedly and the scene of the proposed tragedy was shifted to Kansas City. When it was to occur the defendant had it understood that he was to remain at his home so as to afford a basis for a plea of alibi. There he waited expectantly for news of the murder. His paramour—but she is not on trial and the vocabulary of scorn and contempt need not be wasted on her connection with the contemplated murder of her husband.

The chain of proven facts and properly deducible circumstances cannot be otherwise construed than as conclusive of the defendant's guilt. Of what more avail would it have been as proof of his intent or purpose, to have shown that he furnished the detective with the weapon he was to use or the poison or other instrumentality he might employ in committing the murder. The limits of human fancy know no horizon; but it is difficult to conceive what more the defendant could have done, than he did do, towards the attempt to commit the proposed murder without actually participating in its commission.

Ample proof of the presence of those essentials required by our rulings, having been adduced to sustain a conviction, the judgment of the trial court should be affirmed.