The State, Plaintiff in Error, v. Morris A. Block.—62 S. W. (2d) 428.

Division Two, June 24, 1933.

*Roy McKittrick*, Attorney-General, and *Wm. Orr Sawyers*, Assistant Attorney-General, for plaintiff in error.

128

*Dubinsky & Duggan* for defendant in error.

TIPTON, J.—On April 1st, 1932, at the February Term a grand jury of the Circuit Court of the City of St. Louis, Missouri, returned an indictment against the respondent, Morris A. Block and Otto J. Schwer, which omitting captions and signatures is as follows:

"THE GRAND JURORS OF THE STATE OF MISSOURI within and for the body of the City of St. Louis, now here in Court, duly impaneled, sworn and charged, upon their oath present, that Morris A. Block and Otto J. Schwer, on the 7th day of January one thousand nine hundred and thirty-two, at the City of St. Louis aforesaid, did then and there enter into an unlawful conspiracy, combine, confederation and agreement together to feloniously cheat and defraud the Universal Automobile Insurance Company, a corporation of the State of Texas, by means and use of a trick, false and fraudulent representations, pretenses and statements and that in pursuance of said unlawful conspiracy, combine, confederation and agreement did unlawfully, falsely, fraudulently, designedly and feloniously represent, pretend and state to the agents of the Universal Automobile Insurance Company, a corporation of the State of Texas, as aforesaid, that on the 28th day of December, 1931, while the said Morris A. Block, was operating, driving and in charge and control of a certain automobile, which automobile was moving and being propelled upon, over and along Natural Bridge Road at the

intersection of Goodfellow Avenue, public highways of and in the City of St. Louis and State of Missouri, the said automobile of the said Morris A. Block was struck by and did then and there collide with an automobile driven and being operated by one John J. Lanigan; that one Oleatha Jones was a passenger in the automobile driven and operated by Morris A. Block; that the said Oleatha Jones suffered bodily injuries to-wit: Sprained back and right ovary region bruised, as the result of aforesaid collision with the automobile owned, driven and being operated by the said John J. Lanigan as aforesaid; that Doctor Otto J. Schwer gave the said Oleatha Jones an examination and found aforementioned injuries and submitted a bill of thirty-five ($35.00) dollars to the Universal Automobile Insurance Company, a corporation as aforesaid, for medical services rendered the said Oleatha Jones; that the said Morris A. Block agreed to settle the claim of the said Oleatha Jones for the sum of two hundred and fifty dollars ($250.00) and notified the Universal Automobile Insurance Company a corporation as aforesaid, to that effect; that the agents of the said Universal Automobile Insurance Company, a corporation as aforesaid, believed the said false and fraudulent representations, pretenses and statements so feloniously made as aforesaid by the defendants, to be true, and relied thereon and were then and there deceived thereby; and that the defendants did then and there, by means and use of the trick, false representations and pretenses aforesaid, unlawfully, falsely, fraudulently, designedly and feloniously attempt to obtain of and from the Universal Automobile Insurance Company, a corporation as aforesaid, the sum of two hundred and eighty-five ($285.00) dollars, lawful money of the United States, the property of the said Universal Automobile Insurance Company, a corporation as aforesaid:

"WHEREAS, in truth and in fact, the said Oleatha Jones was not a passenger in the automobile of the said Morris A. Block at the time of the collision of said automobile with the automobile of said John J. Lanigan, and

"WHEREAS, in truth and in fact, the said Oleatha Jones suffered no bodily injuries as the result of aforementioned collision, and

"WHEREAS, in truth and in fact, the said Oleatha Jones never received any medical attention from the said Doctor Otto J. Schwer, as aforesaid, all of which said foregoing facts the said Morris A. Block and Otto J. Schwer then and there well knew,

"Against the peace and dignity of the State."

On April 7, 1932, at the April Term, the respondent, Morris A. Block, filed a motion to quash the indictment alleging among other things: that the indictment failed to charge any offense of any kind or character against this respondent. On the 25th day of August, 1932, at the June Term, the circuit court sustained the motion to

quash the indictment and ordered that the defendant "be discharged and go hence without day."

The State sued out a writ of error to this court.

The State contends that the indictment is properly pleaded under Section 4304, Revised Statutes 1929, which section is as follows:

"CHEATS, FRAUDS, BOGUS CHECKS, ETC.—Every person who, with the intent to cheat and defraud, shall obtain or attempt to obtain, from any other person, or persons, any money, property or valuable thing whatever by means or by use of any trick or deception, or false and fraudulent representation, or statement or pretense, or by any other means or instrument or device, commonly called 'the confidence game,' or by means, or by use, of any false or bogus check, or by means of a check drawn, with intent to cheat and defraud, on a bank in which the drawer of the check knows he has no funds, or by means, or by use, of any corporation stock or bonds, or by any other written or printed or engraved instrument, or spurious coin or metal, shall be deemed guilty of a felony, and upon conviction thereof be punished by imprisonment in the state penitentiary for a term not exceeding seven years."

■ I. The allegations of the indictment charge the respondent with an attempt to feloniously obtain money from the Universal Automobile Insurance Company by means and use of a trick, or false representations and pretense in that the indictment charges the respondent with driving an automobile on a day certain over the Natural Bridge Road, and a pretended collision with another automobile; the pretending that the John J. Lanigan was the driver of the other automobile; the pretending that this respondent had Oleatha Jones as a passenger riding with him, who suffered injuries; the pretending that Doctor Otto J. Schwer examined Oleatha Jones for such injuries; the pretending that the doctor presented a bill for medical services; and the pretending that the respondent offered to settle the claim for a sum certain.

In State v. Pickett, 174 Mo. 663, 74 S. W. 844, in speaking of this statute, we said:

"It was, we think, the purpose of the statute to provide for a class of false representations not included in Section 1927, supra. It was intended to reach a class of offenders known as 'confidence men,' who obtained the money of their victims, 'by means of or by the use of some trick or representation designed to deceive.'"

Again in the case of State v. Wilson, 223 Mo. 156, l. c. 166, 122 S. W. 701, we said:

"The purpose of this statute was to provide for a class of false representations not included in some other section dealing with the subject of the ordinary false representations. It was intended to

reach a class of offenders known as 'confidence men,' who obtained the money of their victims by means of or by the use of some trick or representation designed to deceive. The very essence of the crime denounced by Section 2213 (R. S. Mo. 1899), is that the injured party must have relied upon some false or deceitful pretense or device and parted with his property.''

It would seem that the trick or false representation made to the intended injured party would be one that he would have a right to rely upon after his confidence has been gained. In other words, there should be some confidential relations between the intended victim and the accused in attempting to obtain the money or property from the would be victim.

It is to be noted that the indictment does not allege that an insurance policy had been issued by the Universal Automobile Insurance Company to either the respondent, the driver of the other car or Oleatha Jones. Without a policy of insurance being issued to some one connected with the alleged automobile collision and the subsequent alleged injury, we do not see how the insurance company would have a right to rely upon statements made by the respondent. Before the agents of the insurance company could be deceived by any false representations of the respondent, these representations would have to be such that might create some liability on the part of the insurance company to pay under terms of its policy issued to some one. If it had not issued a policy of insurance to either the respondent or the driver of the other car or to Oleatha Jones, then the company would not in any way be liable any more than any other stranger to the transaction. The mere fact that the indictment alleges ''that the agents of the said Universal Automobile Insurance Company, a corporation as aforesaid, believed the said false and fraudulent representations, pretenses and statements so feloniously made,'' is a conclusion. We do not believe the insurance company would have a right to rely upon such statements in the absence of an allegation that the insurance company agreed to entertain the claim for settlement. Without a policy of insurance being issued to some one connected with this transaction, it would seem that it would be almost impossible to cheat and defraud this insurance company.

''To constitute an indictable attempt to commit a crime, its consummation must be apparently possible, or in other words, there must be at least an apparent ability to commit it; if the means employed are so clearly unsuitable that it is obvious that the crime cannot be committed, the attempt is not indictable.'' [16 C. J. 116.]

II. We believe that the indictment alleges nothing more than a mere preparation for the attempt to commit the crime of obtaining money by trick, or false and fraudulent representations, as dis-

tinguished from the actual attempt itself. In an attempt to commit a crime there must be an overt act in part execution of the intent to commit the crime. Before one can be guilty of an attempt to commit a crime, it is essential that there must be something more than mere preparation or planning. The accused must do something beyond preparation by doing some act moving toward and bringing him nearer the crime he intends to commit. In State v. Davis, 319 Mo. 1222, 6 S. W. (2d) 609, l. c. 611, we said:

"The defining of an attempt to commit a crime and the ascertaining of its essential elements is necessary in the consideration of the question. 16 Corpus Juris, page 112, in defining an attempt, says:

" 'An attempt to commit a crime may be defined as an act done in part execution of a criminal design, amounting to more than mere preparation, but falling short of actual consummation, and possessing, except for failure to consummate, all the elements of the substantive crime, so that, if not prevented, it would have resulted in the full consummation of the intended crime.'

"The elements of an attempt are stated in 16 Corpus Juris, page 113, thus:

" 'An attempt to commit a crime consists of three elements: (1) the intention to commit the crime; (2) performance of some act toward the commission of the crime; and (3) the failure to consummate its commission.' "

We ruled in the Davis case that the charge of attempting to commit a crime consists of three elements: (1) intention to commit the crime; (2) the performance of some act towards commission of the crime; (3) the failure to consummate its commission. It is essential that all three of these elements be alleged in the indictment to make it sufficient. The failure to allege any one of these three elements would make the indictment defective. Under the allegations of the indictment, the respondent had the intention to commit the crime and there was a failure to consummate the commission of the crime. But are the allegations of the indictment sufficient to show performance of some act towards commission of the crime? In other words, was there some overt act committed by the respondent after the plan and preparation for the commission of the crime had been made? We believe that the indictment only charges an intent and preparation to commit a crime and does not charge any act or acts that would constitute an act towards the consummation of the crime intended. The crime could not have been committed except with the consent of Oleatha Jones and only with her cooperation; nor could it have been committed without the insurance company agreeing to entertain the claim for settlement, nor without the execution of proper releases. None of these facts are alleged in the indictment. In

State v. Davis, supra, we cited with approval the case of People v. Murray, 14 Cal. 159, wherein the court said:

"Between preparation for the attempt and the attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement toward the commission after the preparations are made."

■ III. Where the carrying out of an attempt to commit a crime is dependent upon and subservient to the conduct of some third person and that third person is interested as a principal thereof, or is interested as one of the claimants, and has the opportunity to frustrate the commission of the crime by refusing to accept the benefits of the plan, there can be no crime committed. [State v. Fraker, 148 Mo. 143, 49 S. W. 1017.]

The Supreme Court of Kansas in the case of In re Schurman et al., 20 Pac. 277, l. c. 282, said:

"When the facts are so alleged, the means must at least be apparently sufficient to have accomplished the fraud, if the attempt had not been frustrated. Here Mrs. Reddington, the beneficiary, stood between the attempt and the execution. All of the steps taken, and specifically alleged to have been intended, would not have operated to defraud the company. If Reddington was injured, had died, and had been buried, as was pretended, then, so far as the information shows, there was still no apparent ability on the part of the defendants to commit the fraud. Mrs. Reddington, as has been stated, is not charged with co-operating in any way with the intended fraud. There is no statement that it was their intention to use her or the policy which she held to effect their purpose. Being the beneficiary, with the control of the policy, she effectually blocked the defendants from perpetrating a fraud on the company. If what was charged would naturally have resulted in inducing the company to part with its money, such attempt would probably be an offense; but when between the attempt and the execution is interposed the volition of an independent moral agent, then, by stress of the definition just given, an indictable attempt is not made out."

In other words, unless Oleatha Jones agreed to participate in the fraud, there can be no crime charged against this respondent because Oleatha Jones had a right to abandon the criminal attempt originated by this respondent. There is no allegation in the indictment that Oleatha Jones had agreed upon the plan to defraud this insurance company. It would certainly be necessary for her to participate in the plan leading towards its commission. Respondent had no authority to settle this claim for Oleatha Jones or to do anything on her behalf in the settlement of this claim. The indictment further

fails to allege that the agents of the insurance company had agreed to the settlement of the claim for the amount asked by respondent, or in fact for any amount. All the indictment alleges is the mere presentation of the claim with an offer or demand of settlement for a sum certain, and even with a criminal intent that would not constitute a crime. At best the indictment alleges a mere preparation to commit a crime where no overt act is alleged to have been done in the consummation after such preparations.

We, therefore, think that the trial court properly sustained the motion to quash the indictment and the judgment of the trial court is affirmed. All concur.