THE STATE v. WILLIAM WRIGHT, Appellant.—112 S. W. (2d) 571.

Division Two, January 26, 1938.

*Roy McKittrick,* Attorney General, and *Frank W. Hayes,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant, a negro, has twice been convicted of murder in the first degree for shooting and killing Dr. J. T. McCampbell, a negro druggist in Kansas City. On the former appeal, reported in 337 Mo. 441, 85 S. W. (2d) 7, the cause was reversed and remanded for failure to instruct on second degree murder. The appellant has filed no brief. There are sixteen assignments in his motion for new trial. Twelve of these are too general to comply with the new trial statute, Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275). Two of the remaining four assignments complain that there was no substantial evidence to support the verdict; one that an instruction on manslaughter should have been given; and one that the court erred in permitting the State in rebuttal to exhibit the clothing of the deceased to the jury. The evidence on the second trial was practically identical with that at the first, and it is unnecessary for us to give more than a bare outline of the testimony both because it will be found in our former report of the case and also because of the appellant's admissions at the second trial.

The State's testimony from eyewitnesses was that late in the afternoon of March 15, 1933, the appellant entered the drug store of the

deceased and with a revolver committed a holdup. The deceased procured a revolver and in an exchange of shots between the two the deceased was killed by appellant. The appellant took the revolver of the deceased and some money from the cash register, and fled. Appellant's counsel dictated the following admission into the record: "In order to save time, the defendant will admit that he was in the drug store and admits the actions claimed of by the State with reference to the purported holdup. However, he does not admit that he killed the deceased. To save time, we will admit he was there."

The appellant testified that a boy named Bobby, whose full name he did not know, and another boy with whom he was unacquainted, told him Dr. McCampbell, the deceased, had lost so much money in holdups that he had taken out insurance on his money and had arranged with a third party to stage a fake holdup and regain his money. They mentioned that a large sum would be divided between them if they carried a robbery through and assured him there would be no shooting. The appellant undertook the job with the result aforesaid. He said the deceased began shooting first and prevented him from leaving the store, and that he then fired two or three shots but not in the direction of the deceased. The appellant was not injured in the encounter. He picked up the doctor's revolver to prevent further assaults upon himself and took one dollar and some cents out of the cash register and fled. He admitted he made two voluntary statements to the police, one of which substantially corroborated his testimony at the trial. In fact this statement went a little further. In it he said he could not tell whether he had hit the deceased or not on account of a partition between them; and that the two boys said the deceased had $200 at the store.

We can see nothing in this testimony calling for a change in the views expressed when the case was here before. It is obvious that on the State's evidence the homicide was committed in the perpetration of a robbery and was therefore murder in the first degree, Section 3982, Revised Statutes 1929 (Mo. Stat. Ann., p. 2778). If the appellant's testimony is to be believed, it was a homicide in the perpetration of a conspiracy to defraud the insurer of the $200, which was a felony (under Secs. 4095 and 4304, R. S. 1929, Mo. Stat. Ann., pp. 2894, 2996) and the homicide therefore was murder in the second degree. See cases cited in former opinion and State v. Batson, 339 Mo. 298, 306, 96 S. W. (2d) 384, 389. Consequently there was no basis on this theory for an instruction on manslaughter.

But the State proved by a former partner of the deceased that he had no burglary or robbery insurance at the time he was killed. The appellant was entitled to the benefit of that evidence so far as it was in his favor, even though he disputed it and the evidence was

introduced by the State. [State v. Creighton, 330 Mo. 1176, 1194, 52 S. W. (2d) 556, 562.] If there was no insurer to be defrauded then the defendant cannot be said to have been engaged in the perpetration of a conspiracy to defraud the insurer, whatever his belief may have been as to the existence of such insurance. But he would be guilty of an *attempt* to commit the fraudulent crime notwithstanding there was no insurance, 16 Corpus Juris, section 96, page 117, since the requisite elements were present: (1) An intent to commit the crime; (2) an overt act toward its commission; (3) failure of consummation; (4) apparent possibility of commission. [State v. Block, 333 Mo. 127, 131-2, 62 S. W. (2d) 428, 431.] And the attempt to commit the fraudulent crime was itself a felony under Section 4442, Revised Statutes 1929 (Mo. Stat. Ann., p. 3048). So it is clear that even on this theory the homicide was committed in the perpetration of a felony, and therefore would be murder in the second degree under the authorities cited in the preceding paragraph. On no possible theory was the appellant entitled to an instruction on manslaughter.

The eleventh assignment in the motion for new trial asserts the circuit court erred in allowing the coat and other clothing of the deceased to be introduced in evidence and exhibited to the jury: (1) For the reason that same was not proper rebuttal; (2) because the exhibition of the coat prejudiced the jury; (3) and because no expert was used by the State to prove the presence of powder burns or marks on the coat, thereby causing the jury to assume the role of experts in determining that fact. To get at the bottom of this assignment we must refer again to the testimony.

The appellant introduced as a witness Dr. C. G. Leitch, chief deputy coroner of Jackson County, who had performed an autopsy on the deceased the day after the homicide. He found two bullet wounds in the chest near the right shoulder with powder burns around them, and said the revolver must have been as close as fourteen inches when it was fired to produce the burns. On cross-examination he stated the powder burns could not have been made at a distance greater than fourteen inches through clothing if the clothing was heavy, but that there was a possibility, not of powder burns, but of "tattoo"—little flakes of powder—being on the clothing if the firearm were farther away. The clothing was not in the courtroom at the time but Mr. Hadsell, one of counsel for appellant, spoke up and said "I can testify as to what the clothing showed." The prosecuting attorney did not accept this proffer. On redirect examination the deputy coroner expressed a doubt as to whether the powder burns could have been produced by a revolver fired at a distance of fourteen

or fifteen inches through a coat, and said he believed it could not be caused through a thickness greater than an ordinary shirt. The appellant asserted he was never that close to the deceased. The State proved by the undertaker that there were no powder burns around the wounds.

The coat was introduced in evidence in rebuttal, the prosecutor stating he did so "in view of the testimony here that there were powder marks upon this coat and upon the body." When the garment was exhibited to the jury he called their attention to a hole in the right lapel and one just below it, corresponding with the location of the wounds on the body. Nothing was said by him at that time about any powder on the coat and there were no inflammatory remarks. Indeed the evidence does not directly disclose whether there were powder marks on it. In these circumstances it is clear the court did not err in admitting the coat in evidence. [State v. Shawley, 334 Mo. 352, 369, 67 S. W. (2d) 74, 83; State v. Higginbotham, 335 Mo. 102, 111, 72 S. W. (2d) 65, 69.]

We said in the beginning that twelve of the assignments in appellant's motion for rehearing were too general to comply with the new trial statute, Section 3735, Revised Statutes 1929 (Mo. Stat. Ann., p. 3275). Most of these have been held insufficient so many times that they do not call for discussion. These include the following: That the verdict is against the evidence; that the verdict is against the law; that the court erred in giving or refusing instructions of designated numbers without making any effort at all to assign a reason; that the court erred in overruling or sustaining objections, without pointing out what objections or why; that the jury was prejudiced and biased against the appellant; that the jury did not follow the instructions; and that the jury failed properly to apply the instructions.

But we shall refer to three of the assignments which seem too general but nevertheless invite comment.

■ Assignment No. 12 avers that "statements made by counsel for the State were very prejudicial and made solely for the purpose of inflaming the jury against the defendant and thereby causing a conviction regardless of the evidence." The argument of counsel is not preserved in the bill of exceptions. Therefore if the assignment means anything it must refer to statements made by counsel through the course of the trial. The bill of exceptions contains over 300 pages. We have found nothing in the conduct of the State's counsel through the course of the trial that seems in any way prejudicial to the appellant's legal rights. On the contrary, the court and the prosecutor accorded the appellant every consideration to which he was entitled under the law.

■ The thirteenth assignment charges. "That one member of the jury failed to properly answer certain general questions made by the

State which permitted a juror to remain on the panel who was acquainted with the defendant and had had trouble with the defendant and had ill feelings toward him, which fact was not known to the defense at the time the challenges were made; that said juror was prejudiced against the defendant thereby denying him a trial by an impartial and unbiased jury." There is not a word in the record to substantiate this assignment. The bill of exceptions begins with the introduction of testimony and does not show anything about the selection of the jury. When the appellant's motion for a new trial was overruled and the appellant was granted allocution he did say that he was sick and was not paying close attention to the jury and that he overlooked the fact that a former employer of his was a member of the panel. Clearly this is not ground for reversal and remanding of the cause.

The sixteenth assignment is that "the verdict of the jury did not comply with the law pertaining to forms of verdicts." The verdict was "We, the jury, find the defendant William Wright, guilty of murder in the first degree and assess his punishment at Death. Grover Gordon, Foreman." The verdict is a part of the record proper and it would be our duty to scrutinize it whether the motion for new trial assigned error on that ground or not. It does not recite that the jury found the defendant guilty *as charged in the information;* but that does not invalidate it. [State v. Carroll, 288 Mo. 392, 408, 232 S. W. 699, 702; State v. Bacey, 267 S. W. 809, 810; State v. Dimmick, 331 Mo. 240, 246, 53 S. W. (2d) 262, 266.]

We find no error in the record. The appellant had a fair trial. The judgment and sentence are affirmed. All concur. Date of execution set for January 28, 1938.

### On Motion to Modify Opinion.

PER CURIAM:—On motion of the Attorney General the opinion herein is modified in the manner and for the reasons stated in the Per Curiam in State of Missouri, respondent, v. John Brown, appellant, 341 Mo. 53, 112 S. W. (2d) 568. The judgment on the verdict herein convicting appellant of murder in the first degree and inflicting capital punishment is hereby affirmed; and the cause is remanded to the trial court with directions to have the appellant brought before it and to impose a sentence of death by lethal gas in accordance with the provisions of Laws 1937, pages 222, 223.